518 P.2d 275

James T. COOPER, Plaintiff-Appellee and
Cross-Appellant,

v.

ALBUQUERQUE CITY COMMISSION, consisting of Ray Baca, Harry Kinney, Nancy Koch, Robert Poole and Louis Saavedra, and Ray Baca, Harry Kinney, Nancy Koch, Robert Poole and Louis Saavedra, Individually, Defendants-Appellees,

v.

Harry D. ROBINS, Defendant-in-Intervention-Appellant and Cross-Appellee.

No. 9774.

Supreme Court of New Mexico.

Jan. 18, 1974.

Marron & McKinnon, Melvin L. Robins, Albuquerque, for appellant.

Larry Buchmiller, Albuquerque, for appellee.

## OPINION

OMAN, Justice.

Pursuant to a petition filed by plaintiff, the district court issued an alternative writ of mandamus whereby defendants were directed to appear and show cause, if any they had, why they had not conducted an election to recall Intervenor, a municipal judge of the City of Albuquerque.

After a hearing on the merits, the district court entered a judgment commanding that the alternative writ be made permanent; that defendants order a recall election of Intervenor; and, in the event either the defendants or Intervenor should appeal from the judgment, that the portion thereof commanding the calling of a recall election should be stayed until the decision thereon by this court shall have issued.

Intervenor has appealed from that portion of the judgment commanding defendants to order a recall election. Plaintiff has filed a cross-appeal from that portion of the judgment permitting the intervention of Intervenor. We affirm the action of the trial court in permitting the intervention and reverse its action in commanding the calling of a recall election.

On November 24, 1972, plaintiff filed with the clerk of the City of Albuquerque a petition seeking the recall by election of Intervenor. On March 2, 1973, plaintiff filed his petition for writ of mandamus to compel defendants, the governing body of the City, to forthwith conduct a recall election, or appear and show cause why they had not done so. On the same date the alternative writ of mandamus issued.

On March 5, the district court entered an order granting leave to attorneys Lorenzo A. Chavez and Melvin Robins "to introduce evidence, file briefs and argue as amicus curiae." The attorneys for plaintiff and defendants filed a stipulation on March 8 wherein, among other things, they agreed and consented:

"* * * to the entry of the Law firm of Chavez and Robins into this cause as amicus curiae, for the limited purpose of introducing argument, authority, or evidence to protect the interests of Albuquerque Municipal Judge Harry Robins [Intervenor]."

On March 8 the district court found and ordered that:

"* * * the terms and conditions of the Stipulation are fair and reasonable, and they are hereby adopted by reference as the order of this Court, as though fully set forth herein."

The case was tried on March 20 upon the issues presented by the allegations contained in the alternative writ and defendants' answer or response thereto. At the conclusion of these proceedings, the district court announced it would:

"* * * find as a matter of law and direct as a matter of law, that the City Commission for the City of Albuquerque [defendants] shall forthwith call or provide for a recall election, and in the alternative shall * * * within twenty days from this date recheck the petitions and give formal notification of any signatures that they shall purge * * *."

On March 27, Intervenor moved for leave to intervene on the grounds that (1) "* * * as a Municipal Court Judge for the City of Albuquerque he has a direct interest relating to the claims set forth in the Petition for Writ of Mandamus filed herein on 2 March 1973, and is so situated that the final disposition of the action may, as

a practical matter, impair or impede his ability to continue sitting as a Municipal Court Judge"; and (2) "* * * his interest in the pending litigation is not adequately represented and protected" in that "the defendants have not indicated that they will appeal the Court's ruling" of March 20.

On April 10, by way of supplemental findings of fact and conclusions of law, the district court found and concluded:

"The Court hereby finds as follows:

"1. That the intervenor Harry D. Robins has an interest which can be adversely affected by the subject matter of this action.

"2. That the interest of Harry D. Robins was being protected by the Defendant Albuquerque City Commission throughout the first hearing.

"3. That the Defendant Albuquerque City Commission has through its attorney indicated in open court that it did not intend to appeal a decision by the Court which could be adverse to the interests of Harry D. Robins.

"THE COURT CONCLUDES AS A MATTER OF LAW:

"1. The Petition for Intervention by Harry D. Robins should be granted because Petitioner has an interest which would be adversely affected by enforcement of the judgment and which interest would not otherwise be protected."

None of these supplemental findings of fact have been challenged. The supplemental conclusion has been challenged by plaintiff in all his points relied upon for reversal in his cross-appeal.

Thereafter, but on the same date of April 10, there was filed the judgment from which this appeal and the cross-appeal have been taken.

Since plaintiff's cross-appeal concerns itself with claimed error on the part of the district court in permitting the Intervenor to intervene as a party to this cause, we shall first dispose of the cross-appeal.

Plaintiff raises three points upon which he relies for reversal of the district court in permitting the intervention. The first of these is:

"The trial court abused its discretion by allowing cross-appellee to intervene after the Court had called for requested findings of fact and conclusions of law from the parties."

It is apparent from the above recited facts that the motion to intervene was filed on March 27 and the final judgment was not entered until April 10. However, it is also apparent that the motion was not filed until after the trial was concluded and the trial court had announced on March 20 the substance of the judgment it proposed to enter. It was not until this announcement by the trial court that defendants had any reason to indicate, or had indicated, they had no intention of appealing from that judgment upon its entry. If defendants did not appeal—and they did not—then obviously they were no longer representing the interests of Intervenor.

Plaintiff contends the application for intervention was untimely, since it came after the trial had been concluded and the trial court had announced what it proposed to include in its judgment. Plaintiff relies upon Speer v. Sierra County Commissioners, 80 N.M. 741, 461 P.2d 156 (1969); Tom Fields, Ltd. v. Tigner, 61 N.M. 382, 301 P.2d 322 (1956); Encino State Bank v. Tenorio, et al., 28 N.M. 65, 206 P. 698 (1922); Annot., 5 A.L.R.Fed. 518 (1970); Annot., 37 A.L.R.2d 1306 (1954).

Those portions of our rule governing intervention of right and by permission are Rule 24(a) and (b) of the Rules of Civil Procedure for the District Courts [§ 21–1–1(24)(a) and (b), N.M.S.A.1953 (Repl. Vol. 4, 1970)]. Insofar as here pertinent, these portions of our rule are identical with Rule 24(a) and (b) of the Federal Rules of Civil Procedure.

In Speer v. Sierra County Commissioners, supra, a peremptory writ of mandamus was entered in August 1966. Several months thereafter and "after the litigation

between relator and respondents was to all intents and purposes concluded," the intervenor filed his motion to intervene. The motion was granted and intervenor filed a motion " 'for an order herein setting aside the judgment previously rendered by the Court and dismissing the petition of the relator.' " The trial court kept this motion under advisement for over two years, and "on December 23, 1968, entered an order purporting to withdraw the writ of mandamus * * *." In reversing this order of December 23, 1968, this court stated at 80 N.M. 742, 461 P.2d 157: "* * *. At the time the intervention order was entered, there was no controversy existing between the relator and respondents. This controversy was ended after the order of the court [entered in August 1966] was followed by the action * * *" of the county commissioners in making a tax levy.

In the case now before us, the controversy had not ended when Intervenor filed his motion on March 27 for leave to intervene. Thereafter requested findings of fact and conclusions of law were submitted to the court and the court's decision, consisting of findings of fact and conclusions of law, as well as the final judgment, were entered. The motion for leave to intervene was prompted by a statement of defendants to the effect that they had no intention of appealing the judgment of the trial court, if it should be—and they then understood it likely would be—adverse to them.

In Tom Fields, Ltd. v. Tigner, supra, the motion to intervene was filed in a foreclosure suit after the trial had been concluded, the trial court had announced what its decision would be, and the parties had submitted their requested findings of fact and conclusions of law. However, it was filed prior to the entry of the judgment.

The trial court denied the petition to intervene on the ground that the motion was untimely. In affirming this action of the trial court, we quoted the following from 7 Cyclopedia of Federal Procedure, § 24:31 (3d Ed. 1951):

" 'In each instance, timely application must be made. * * * However, whether as of right or by permission of the court, Rule 24 is silent as to what constitutes timely application, and the question must be answered in each case by the exercise of sound discretion by the Trial Court. There is, therefore now, as formerly, latitude for the court to allow intervention within what time scope the justice of the case may appear to warrant.' "

We then further stated:

"As disclosed by some of the cases, just when an application to intervene is timely must depend on the circumstances of each case. * * * Counsel for plaintiff in error has made no explanation below, nor here, as to why it delayed from June, 1955, to January, 1956, in asking intervention.

"In the meantime trial had been completed and decision on the merits announced. * * * We are not prepared to say there was an abuse of discretion in his [the trial court's] action, * * *."

Until Intervenor in the present case learned that defendants did not intend to appeal from the threatened adverse ruling, he had no reason to intervene. As found by the trial court, and which findings have not been attacked: "* * * [T]he intervenor * * * has an interest which can be adversely affected by the subject matter of this action." "* * * [T]he interest of [Intervenor] was being protected by [defendants] throughout the first hearing [the trial at the conclusion of which the trial court announced its intention to order a recall election]." "* * * [T]he [defendants] through [their] attorney indicated in open court that [they] did not intend to appeal a decision by the Court which could be adverse to the interests of [Intervenor]."

Under these circumstances, we are unable to say the trial court abused its discretion in granting the intervention. We do not speculate on what our decision might

have been on this issue had the trial court denied the motion to intervene.

We are of the opinion that an attempt to intervene after final judgment has been entered should fail in the absence of extraordinary or unusual circumstances. See Wright and Miller, Federal Practice and Procedure: Civil, § 1916 at 579, n. 9 (1972), and cases therein cited. However, we are also of the opinion that intervention should not automatically be denied simply because a final judgment has been entered. One valid reason for granting intervention at this late date is the fact that an existing party to the suit has determined not to take an appeal, and the person seeking intervention will be adversely affected by the final judgment. See Wright and Miller, Federal Practice and Procedure: Civil, supra, at 582–583 and particularly n. 14 and cases therein cited.

Nothing stated in Encino State Bank v. Tenorio, et al, supra, or in the annotation in 37 A.L.R.2d, supra, compels, or even suggests, that the trial court, under the facts of this case, was obliged in the exercise of sound discretion to deny the application for intervention.

The annotation in 5 A.L.R.Fed., supra, does not in any way concern itself with this issue.

In his second point, plaintiff asserts that assuming Intervenor "originally had a right to intervene in the pending litigation, [he] waived that right when he elected to have his interest represented by amicus curiae at the trial."

As shown above, the trial court found that the interest of Intervenor was protected by defendants throughout the trial. It was after the trial that the district court announced its intended decision. Shortly thereafter Intervenor learned that defendants had no intention of appealing from this threatened adverse ruling. Thereupon he had reason for concern and cause to intervene for the protection of his interests by appeal, if necessary. It has proven necessary, as evidenced by this appeal.

We agree with plaintiff that a waiver is the intentional relinquishment or abandonment of a known right, and that the act of waiver may be evidenced by conduct as well as by express words. Ed Black's Chevrolet Center, Inc. v. Melichar, 81 N.M. 602, 471 P.2d 172 (1970); Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967). However, since Intervenor had no reason to seek intervention so long as his interests were being protected by defendants and the amicus curiae, we fail to understand how he waived his right to intervene by accepting this protection of his interests. It is true that he could have sought intervention long before he did, but once defendants failed and the amicus curiae was no longer able to adequately represent and protect his interests, he promptly filed his motion to intervene.

In the final point of his cross-appeal, plaintiff contends:

"The trial court erred as a matter of law in granting intervention, because the unchallenged supplemental Findings of Fact and Conclusions of Law show affirmatively that [Intervenor's] interest was adequately represented by an existing party."

There was no question about the adequacy of the representation of the interests of Intervenor, until defendants announced they were not going to appeal from the judgment which very seriously affected his rights. At that point he had no party to the litigation upon whom he could rely for representation on appeal. Therefore, he sought intervention as a party to secure unto himself the right of appeal. We have hereinabove stated that a valid reason for granting intervention may be the decision of an existing party to the suit not to appeal. This is a particularly persuasive reason if there is a significant difference between the interests of the absentee and the party upon whom the absentee relies for representation of his interests.

As stated in Wright and Miller, Federal Practice and Procedure: Civil, supra, at 533:

" * * * A discriminating appraisal of the circumstances of the particular case is required [to determine the adequacy of the representation], but since the rule is satisfied if there is a serious possibility that the representation may be inadequate, all reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party, to intervene so that he may be heard in his own behalf."

It cannot be seriously questioned that a recall election directed at the removal of Intervenor from his office of municipal judge places him in a position which is considerably different from that of defendants as the governing body of the municipality.

We now turn our attention to Intervenor's appeal from the peremptory writ of mandamus by which defendants were commanded to conduct an election for the recall of Intervenor. He first contends the exclusive jurisdiction to remove a municipal court judge is vested in the New Mexico Supreme Court by Art. VI, § 32 of the Constitution of New Mexico.

Plaintiff's position is that Art. VI, § 32 neither expressly nor by implication limits the power of the Legislature to provide for the recall of judges of legislatively created courts, and, therefore, Intervenor is subject to the recall provisions of § 14–13–16, N.M.S.A.1953 (Repl.Vol. 3, 1968). This section of our statutes provides in part: "In any commission-manager municipality, any elective officer is subject to a recall election. * * *" This statute was enacted in its present form in 1965. Insofar as the point presently under consideration is concerned, there is no question about Albuquerque being a commission-manager municipality or about Intervenor being an elected officer thereof.

The pertinent provisions of Art. VI, § 32, supra, are:

"There is created the 'judicial standards commission,' * * *.

"In accordance with this section, any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office or willful and persistent failure to perform his duties or habitual intemperance, * * *. The commission may, after investigation it deems necessary, order a hearing to be held * * *. After hearing * * *, if the commission finds good cause, it shall recommend to the Supreme Court the discipline, removal or retirement of the justice, judge or magistrate.

"The Supreme Court shall review the record of the proceedings on the law and facts and may permit the introduction of additional evidence, and it shall order the discipline, removal or retirement as it finds just and proper or wholly reject the recommendation. * * *

" * * *.

"This section is alternative to, and cumulative with, the removal of justices, judges and magistrates by impeachment and the original superintending control of the Supreme Court. * * *"

This section of the judicial article of our constitution was overwhelmingly adopted by the people at a special election held November 7, 1967. The Judicial Standards Commission, as provided for in this section, came into being on July 1, 1968. See § 16–8–1, N.M.S.A.1953 (Repl.Vol. 4, 1970).

Several other jurisdictions have been faced with similar issues. In Alabama State Bar ex rel. Steiner v. Moore, 282 Ala. 562, 213 So.2d 404 (1968), the issue presented to the Supreme Court of Alabama was whether a judge could be disciplined or disbarred by the Board of Bar Examiners during his term of office for acts performed in his judicial capacity. Under the constitution of Alabama a judge could be impeached, if guilty of impeachable conduct, or removed from office by the Governor, on the address of two-thirds of each House of the General Assembly, if

guilty of willful neglect of duty or any other reasonable cause not sufficient for impeachment.

The Alabama court held that the constitutional methods for impeachment and removal were exclusive. It relied upon the maxim of "expressio unius est exclusio alterius" [at times worded as "inclusio unius est exclusio alterius]. This simply means the expression or inclusion of one thing is the exclusion of another. Board of Com'rs of Guadalupe County v. State, 43 N.M. 409, 94 P.2d 515 (1939).

The California Supreme Court in People v. Craig, 61 P.2d 934 (Cal.1936), relied upon this same maxim. In holding that the only ways in which an Associate Justice of the District Court of Appeal could be removed from his office were by one of the three methods provided by the California constitution, the court stated that: " * * * [T]he people intended to and have designated [in the constitution] the only means by which such officers may be ousted for misdemeanor in office."

In Cusack v. Howlett, 44 Ill.2d 233, 254 N.E.2d 506 (1969), the question presented to the Illinois Supreme Court was whether a resolution by the Illinois House of Representatives to investigate allegations of judicial impropriety by a member or members of the Illinois Supreme Court was repugnant to provisions of the Illinois constitution relative to the separation of powers of the executive, legislative and judicial branches of the State's government, and to the retirement for disability, suspension without pay or the removal for cause of judges by a commission comparable to the New Mexico Judicial Standards Commission.

The Illinois court held that the House resolution was unconstitutional as a violation of the separation of powers provision of the constitution. It also stated at 44 Ill.2d 244, 254 N.E.2d 511:

"The authority to remove judicial officers by legislative address that was formerly given to the legislative department of the government has now been given to the judicial department, and it is the Supreme Court, as the head of that department, which is now authorized to prescribe standards of judicial conduct. * * *"

The Utah Supreme Court concluded that a statute, providing that the public welfare commission shall have "the general control and supervision over juvenile courts," offended the provision in the Utah constitution relating to the separation of powers, and that judges are amenable only to constitutional sanctions for removal. In Re Woodward, 14 Utah 2d 336, 384 P.2d 110 (1963).

■ We agree with the results reached by the Alabama, California, Illinois and Utah courts in those cases and generally with their reasoning. We agree with the principles relied upon by the Illinois and Utah courts. We do, however, find some difficulty in relying on the maxim of expressio unius est exclusio alterius. We have held that the Legislature has plenary legislative authority limited only by the State and Federal constitutions. Albuquerque Met. Arroyo Flood Con. A. v. Swinburne, 74 N.M. 487, 394 P.2d 998 (1964).

Thus, we prefer to rely upon the principle of constitutional interpretation which recognizes that when a power, together with the express means of its execution, are constitutionally granted and determined, it is reasonable to infer therefrom that other means of exercising this power were intentionally excluded and should not be permitted or allowed. The difference between this principle of construction and the principle of construction expressed by the maxim of expressio unius est exclusio alterius lies in the fact that in the one expressed by the maxim all other means of exercising the power are held to have been denied simply because they were not expressly granted or included, whereas in the other, a reasonable inference or implication of denial arises from that which is expressly included.

This principle of construction is expressed by plaintiff in his answer brief as

a limitation clearly and necessarily implied. In Robison v. First Judicial District Court, 73 Nev. 169, 175, 313 P.2d 436, 440 (1937), it was expressed as follows by the Nevada Supreme Court:

"* * *. This [a concession that a constitutional provision relating to impeachment of certain public officers renders the legislature powerless to provide other means of removal from office of these officers] results from the well recognized rule that an express constitutional provision requiring a certain thing to be done in a certain way is exclusive to like extent as if it had included a negative provision to the effect that it may not be done in any other way. 'Negative words are not indispensable in the creation of limitations to legislative power * * *. [I]mplied as well as express restrictions must be regarded * * *.' State v. Arrington, 18 Nev. 412, 415, 4 P. 735, 737."

In Scoggins v. Southwestern Electric Service Company, 434 S.W.2d 376, 380 (Tex.Civ.App.1968), the Court of Civil Appeals of Texas expressed this principle of construction as follows:

"* * *. In this jurisdiction, we follow the rule that '* * * where a power is expressly given by the Constitution, and the means by which, or the manner in which it is to be exercised, is prescribed, such means or manner is exclusive of all others. * * *' Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 553 (1937). Thus, when a right or cause of action is created specifically by the Constitution, the Legislature cannot attempt by statute to enlarge or diminish that right. * * *"

■ Article VI, § 32, supra, spells out in detail, the grounds, as well as the procedures, for removal of a judge from office. It further provides that the removal of judges for the reasons stated and in the manner provided "is alternative to, and cumulative with, the removal * * * by impeachment [as provided in Art. IV, §§ 35 and 36, Constitution of New Mexico] and the original superintending control of the Supreme Court [as provided in Art. VI, § 3, Constitution of New Mexico]."

By creating a Judicial Standards Commission and explicitly providing for the grounds for and general procedures to be followed in disciplining and removing judges from office, and then making express reference to the other two constitutional provisions pursuant to which judicial officers may be disciplined or removed from office, it can and should be fairly implied that no legislatively created means of disciplining or removing judicial officers was contemplated or should be recognized. This position is clearly consistent with the constitutional history of New Mexico, and particularly with the history of judicial recall. See Opinion No. 73–3 issued January 9, 1973 by the Attorney General of New Mexico; Robert W. Larson's New Mexico's Quest for Statehood (1846–1912), University of New Mexico Press (1968).

It is unnecessary for us to consider the validity of the other points relied upon by Intervenor for reversal of the trial court's judgment making the alternative writ of mandamus permanent and thereby commanding defendants to conduct a recall election.

The judgment of the trial court should be reversed and the permanent writ of mandamus quashed.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.