1997–NMSC–009

933 P.2d 210

**Dale BURGE, Plaintiff–Appellee,**

v.

**MID–CONTINENT CASUALTY COMPA-NY, a foreign insurance company licensed to do business in the State of New Mexico, and Roger B. Graham, individually and as the agent, officer, director or employee of Mid–Continent Casualty Company, Defendants–Appellants.**

No. 22284.

Supreme Court of New Mexico.

Dec. 4, 1996.

Motion for Rehearing Denied Jan. 29, 1997.

**2**

Civerolo, Wolf, Gralow & Hill, P.A., William P. Gralow, Nickay B. Manning, Albuquerque, for Defendants–Appellants.

Beall, Biehler & Bannerman, Gregory L. Biehler, Felicia Norvell, Lisa. A. Joynes, Albuquerque, for Plaintiff–Appellee.

### OPINION

FRANCHINI, Justice.

■ Appellee Dale Burge ("Burge") was involved in a traffic collision with uninsured motorist Michael Sanchez ("Sanchez"). Burge brought a negligence action against Sanchez[1] in district court in Taos ("*Burge I*"). At approximately the same time, Burge filed a separate action against his insurance carrier, Appellant Mid–Continent Casualty Company (Mid–Continent) in district court in Albuquerque ("*Burge II*"), alleging breach of contract and bad faith. While neither Burge nor Mid–Continent sought to consolidate the two suits, Mid–Continent did attempt to intervene in *Burge I*. When Sanchez failed to answer the complaint in *Burge I*, the court entered a default judgment in favor of Burge and against Sanchez. Thereafter, the *Burge II* court granted a partial summary judgment in favor of Burge, holding that, under the policy, once the default judgment was entered against Sanchez in *Burge I* Mid–Continent became liable to pay Burge damages up to the policy limits.

■ On appeal we decide whether an automobile liability insurance carrier providing

---

1. We note that Burge filed suit against both Michael and Dolores Sanchez because it was unclear whether Michael or Dolores was operating the automobile at the time of the accident. For the purposes of this opinion, however, we will refer to the uninsured driver as "Sanchez".

uninsured motorist coverage is bound by a default judgment rendered against the uninsured motorist in a separate suit. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and we reverse. Because we reverse and remand this case for a new trial, we do not address Appellant's other claimed errors.

**Facts and procedure.** The relevant facts in addressing this issue are as follows. On August 31, 1990, Burge drove from Lawton, Oklahoma to Red River, New Mexico to visit some friends. The following morning, while riding his motorcycle in Questa, Burge was involved in a collision with an automobile driven by Sanchez. Sanchez was cited at the scene for not having automobile insurance. As a result of the accident, Burge sustained multiple injuries and damage to his motorcycle.

At the time of the accident, Mid–Continent was Burge's insurance carrier. Burge had uninsured motorist coverage of $25,000 on each of his four vehicles, making available to him a potential $100,000 of coverage with Mid–Continent. In September 1990, Burge notified Mid–Continent of the accident. Thereafter, Mid–Continent began its accident investigation, taking witness statements and examining the site of the accident in Questa. In April 1991, Mid–Continent took Burge's sworn statement. During an off-the-record break, Burge reported that the night before the accident, he and his friends drank heavily but denied drinking any alcohol the morning of the accident. After Mid–Continent evaluated Burge's sworn statement and his off-the-record statement, it determined that there were a number of inconsistencies between Burge's version of the accident and the witness statements. One witness reported that Burge's bike was parked in front of a bar before the accident. Two other witnesses told the investigating officer that immediately before the accident Sanchez was stopped in his traffic lane waiting to make a left turn. They stated that Burge then attempted to pass Sanchez in the left lane at a high rate of speed. Although one witness stated that Sanchez's left-turn signal was flashing, the officer reported that the signal did not have a

bulb and appeared to have been broken for some time. Although Burge reported his speed at time of the accident to be 40 to 45 miles per hour, the police officer estimated Burge's speed to have been in excess of 50 miles per hour. Thereafter, Mid–Continent questioned Burge's claim for coverage because it had evidence that arguably established Burge's comparative negligence. Over the next year and a half, Mid–Continent and Burge attempted to settle the case on various occasions but were unable to reach an agreement.

On May 28, 1992, Burge filed an action against Sanchez, *Burge I*, alleging negligence, and on June 6, 1992, Sanchez was served process by personal service. On June 3, 1992, a copy of the *Burge I* complaint was sent to Mid–Continent. On June 24, 1992, Burge filed an action against Mid–Continent, *Burge II*, seeking a declaratory judgment that he was entitled to coverage under the terms and conditions of the uninsured motorist insurance policy. Burge also alleged claims for breach of contract, bad faith, violation of the Unfair Practices Act ("UPA"), NMSA 1978, §§ 57–12–1 to –22 (Repl.Pamp. 1987 & Cum.Supp.1994), and violation of the Trade Practices and Fraud Act ("TPFA"), NMSA 1978, §§ 59A–16–1 to –30 (Repl. Pamp.1992 & Cum.Supp.1992).

On July 7, 1992, Burge filed a motion for default judgment in *Burge I* because Sanchez had not answered the complaint. On July 14, 1992, the trial court entered the default judgment, finding Sanchez liable for negligence. Mid–Continent did not receive a copy of the default motion until July 10, 1992, and was never given notice of the hearing date. On July 15, 1992, within three days of the receipt of the motion, Mid–Continent filed its motion to intervene in *Burge I*. The *Burge I* court, however, did not grant Mid–Continent's motion until September 1, 1992, and on August 24, 1992, it heard testimony from Burge only on the issue of damages. When its motion to intervene was granted, Mid–Continent filed a complaint-in-intervention, requesting to submit the contested issues of Burge's comparative negligence and damages to the court for a determination. Upon Burge's motion to dismiss the com-

plaint-in-intervention, the trial court decided to dismiss it, thereby allowing all of Mid–Continent's issues to be heard in the *Burge II* suit in Bernalillo County. Accordingly, on November 20, 1992, the *Burge I* court awarded Burge $350,000 in damages against Sanchez but hand-wrote on the final judgment **"This judgment has no binding effect upon the plaintiff-in-intervention, Mid–Continent Casualty Company."**

■ In August 1993, Burge filed a motion in *Burge II* for a partial summary judgment against Mid–Continent on the liability issues. The motion sought to have the default judgment obtained against Sanchez in *Burge I* be conclusive on the issue of liability against Mid–Continent in *Burge II*. The trial court granted that motion, concluding that Burge was legally entitled to coverage and had fully complied with the uninsured motorist policy by giving Mid–Continent notice of his action in *Burge I* and obtaining a judgment. The *Burge II* court ruled that, on the issue of liability, Mid–Continent was bound to the default judgment obtained in the tort action between Burge and Sanchez. In the trial on the remaining claims, the court allowed evidence that showed Burge drank heavily before the accident, rode his motorcycle while intoxicated, passed in an unsafe manner and at an unsafe speed, and failed to properly control his motorcycle. However, this evidence was admitted *solely* on the bad-faith issue to show Burge's failure to deal honestly and fairly with Mid–Continent. The trial court refused to allow Mid–Continent to instruct the jury on the issue of Burge's comparative fault. The jury returned a verdict for Burge and against Mid–Continent in the amount of $100,000 compensatory damages and $350,000 in punitive damages on the claims of breach of contract, bad faith, and violation of the UPA and TFPA.

■ *The Burge II Court erred in granting Burge's motion for a partial summary judgment.* Summary judgment is only proper when no genuine issue of material fact exists and the movant is entitled to a judgment as a matter of law. *Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990); SCRA 1986, 1–056(C) (Repl.Pamp.1992).

■ Mid–Continent contends that the *Burge II* court's refusal to allow it to litigate its contractual liability essentially denied Mid–Continent its day in court. Mid–Continent argues that the default judgment in *Burge I* had no binding effect in *Burge II* because it was not a party in *Burge I*, nor was it not allowed to participate. Mid–Continent also directs our attention to the court's handwritten language contained in the final judgment order in *Burge I* as support for its contention. Mid–Continent further argues that the *Burge I* court's dismissal of its complaint-in-intervention precluded it from litigating the issue of Burge's comparative negligence in the first suit thus allowing it to litigate in *Burge II* the issue of Burge's comparative fault. We agree with Mid–Continent's contentions and therefore hold that the court in *Burge II* erred by binding Mid–Continent to the default judgment entered in *Burge I*.

■ We have not previously addressed the question of the binding effect of a default judgment against the uninsured motorist upon an insurance carrier. Other courts that have considered this issue, however, recognize that the conclusive effect of a judgment obtained in the prior action depends, in part, upon the insured's compliance with the fundamentals of procedural due process. *See, e.g., Champion Ins. Co. v. Denney*, 555 So.2d 137, 139–40 (Ala.1989) (holding insurer would be bound only if it had "full notice and adequate opportunity to intervene and present any defenses and arguments necessary to protect its position"); *Briggs v. American Family Mut. Ins. Co.*, 833 P.2d 859, 864 (Colo.App.1992) (holding insurer was bound by judgment only if it had adequate notice and opportunity to intervene in insured's action against uninsured motorist); *Guillan v. Watts*, 249 Kan. 606, 822 P.2d 582, 590 (1991) (holding that an insurer is bound by a judgment *only* if it has notice of the action and elects not to intervene); *Pickens v. Allstate Ins. Co.*, 17 Kan.App.2d 670, 843 P.2d 273, 276 (1992) (holding that insurer was bound by judgment secured against uninsured motorist where insurer was given notice of insured's action and opportunity to intervene, but declined to intervene); *Zirger v. General*

*Accident Ins. Co.*, 144 N.J. 327, 676 A.2d 1065, 1070 (1996) (allowing the insurer to be bound only if had notice and opportunity to intervene and if the judgment was obtained in an adversarial proceeding); *Wells v. Hartford Accident & Indem. Co.*, 459 S.W.2d 253, 259 (Mo.1970) (holding insurer with notice and opportunity to intervene in tort action against uninsured motorist is bound by judgment); *Heisner v. Jones*, 184 Neb. 602, 169 N.W.2d 606, 612 (1969) (holding the insurer will not be bound unless given full notice and adequate opportunity to intervene and defend on all damages and liability issues); *see also* Francis M. Dougherty, Annotation, *Right of Insurer Issuing "Uninsured Motorist" Coverage to Intervene in Action by Insured Against Uninsured Motorist*, 35 A.L.R.4th 757, 761 (1985 & Supp.1995) [hereinafter *"Dougherty"*].

Contrary to the *Burge II* trial court's determination, we are not persuaded that the language of the contract controls under the facts presented in this case. The policy provides and both parties stipulated that Oklahoma law applies to this contract. New Mexico law recognizes the validity of choice of law provisions contained in contracts. *See Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 98, 811 P.2d 1308, 1309 (1991); *Jim v. CIT Fin. Servs. Corp.*, 87 N.M. 362, 364, 533 P.2d 751, 753 (1975). However, a choice of law provision will only extend to substantive law, and the court is free to apply its own procedural law unless specifically stated otherwise in the parties' contract. *See Nez v. Forney*, 109 N.M. 161, 162–63, 783 P.2d 471, 472–73 (1989). Therefore, we apply the law of the forum with respect to the procedural matters and Oklahoma law with respect to any substantive issues raised in this appeal.

The language of the uninsured motorist policy states in pertinent part:

*No judgment* against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless the insured has given the company

adequate notice of filing and pendency of the action against the uninsured motorist by the insured.

Although this provision describes a situation when the insurance carrier *may* be bound by a judgment, it does not answer the question presented in this case. The question presented here is whether the insurance company had sufficient notice and adequate opportunity to intervene to satisfy procedural due process.

Under the facts in the instant case, we are convinced that Mid–Continent was not afforded procedural due process. Contrary to Burge's contention, this is not a typical case where the insurance carrier *was permitted to intervene* in the tort action against the uninsured motorist, *but refused to do so.* There is a significant difference between insurers who refuse to intervene and those who attempt to intervene but are precluded from doing so by the court. Here, Mid–Continent did everything it could to intervene in *Burge I* to protect its interests. Immediately after the entry of the default judgment on liability against the uninsured motorist but prior to the damages hearing and the entry of final default judgment, Mid–Continent sought to intervene in *Burge I* and present its case for Burge's comparative fault and damages. Though the *Burge I* court initially granted Mid–Continent's motion to intervene, it subsequently dismissed its complaint-in-intervention, preventing Mid–Continent from litigating its contractual liability in that case. When Mid–Continent's complaint-in-intervention was dismissed, it did everything it could to ensure that the judgment in the tort action had no binding effect on its contractual rights and liabilities.

Burge, on the other hand, did everything he could to prevent Mid–Continent from participating in *Burge I*. First, Burge gave Mid–Continent insufficient notice of Sanchez's failure to answer the complaint and gave them no notice as to the date of the scheduled default hearing. Following the court's order granting Mid–Continent's motion to intervene in *Burge I*, Burge filed a motion to dismiss the complaint-in-intervention, asserting that "[b]oth liability and damages have been established against [the unin-

sured motorists]," and that "[n]o remaining issue can or will be resolved by the Court." Burge further argued in his motion to dismiss Mid–Continent that "no issue remains to be determined for which [plaintiff-in-intervention] may be permitted to assert." After the court dismissed Mid–Continent from the case, Burge then moved the *Burge I* court to delete its handwritten language pertaining to Mid–Continent, requesting the court "reconsider the language of the default judgment" and "strike the statement that the judgment has no binding effect on Mid–Continent." The motion was denied.

■ Based upon the court's hand-written language in *Burge I* and its action dismissing the plaintiff-in-intervention, it follows that the *Burge I* court, in exercising its discretion, determined that intervention pursuant to SCRA 1986, 1–024(A) and (B) (Repl. Pamp.1992), was not the best nor the only means for the insurer to protect its rights. *See Solon v. WEK Drilling Co. Inc.*, 113 N.M. 566, 567–68, 829 P.2d 645, 646–47 (1992) (noting that a district court considering a motion to intervene under Rule 24 has discretion under both subsections (A) and (B) of the rule). The *Burge I* court was fully aware of the separate suit between Burge and Mid–Continent, and, in dismissing Mid–Continent's intervention, it could have reasonably concluded that the contract issues raised in Mid–Continent's complaint could be litigated in the on-going separate contract action.

■ Burge contends that Mid–Continent had adequate notice of the suit and should have intervened in *Burge I* prior to the court's entry of a default judgment against Sanchez on the issue of Sanchez's liability. However, an insurance carrier does not always have the right to intervene in an action against an uninsured motorist. Several jurisdictions hold that there is no such right or base the insurer's right to intervene on certain conditions. *See generally Dougherty, supra.* "[N]o one has a right to intervene ... unless he has some right to protect which ... *is not being* adequately protected by the existing parties." *Id.* at 760. In New Mexico, Mid–Continent could not intervene as a matter of right until it could show the court that the disposition of the action may

impede its interest. *See* SCRA 1986, 1–024(A)(2) (Repl.Pamp.1992) (providing that a person may intervene when he claims an interest "*and* he is so situated that the disposition of the action may ... impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties"). Mid–Continent's interest could have been adequately represented by Sanchez until he defaulted. Once the default occurred, however, Mid–Continent's ability to protect its interests was severely impeded. *See* Annotation, *Intervention as a Matter of Right*, 84 A.L.R.2d 1412, 1421 (1962) (explaining representation is considered inadequate if original party is not diligent in the defense of an action and allows a default judgment to be entered). We cannot conclude its motion to intervene under the circumstances of this case was untimely.

■ ■ Because Rule 24 is silent as to what constitutes a timely application to intervene, the question of timeliness is determined on a case-by-case basis. *See Cooper v. Albuquerque City Comm'n*, 85 N.M. 786, 789, 518 P.2d 275, 278 (1974); *Apodaca v. Town of Tome Land Grant*, 86 N.M. 132, 133, 520 P.2d 552, 553 (1974). The *Burge I* court made the initial determination regarding whether Mid–Continent's motion to intervene was timely, and we believe it made that decision in favor of Mid–Continent. The language the court included in its final judgment order, holding that Mid–Continent was not bound by its judgment, clearly supports this conclusion.

■ ■ The facts in this case are similar to *Erickson v. Bennett*, 409 N.W.2d 884 (Minn.Ct.App.1987). In *Erickson* the insured notified its insurance carrier of its suit against the uninsured motorist, but failed to provide its insurer with sufficient notice of the default hearing. The insurer received notice of the uninsured motorist default hearing a few days before the scheduled hearing. Two months after the entry of the default judgment, the insurer filed a notice of intervention, which was denied as untimely. The appellate court reversed, concluding that the insurer acted in a timely manner once it learned that its interests were unprotected. The court concluded in part:

St. Paul [the insurer] did not sit back, waiting to act only if the default hearing resulted in an adverse decision. St. Paul had insufficient notice of the hearing to permit immediate intervention and is now only seeking to intervene for the purpose of having the issues of liability and damages determined in a full adversary proceeding.

*Id.* at 887. The *Erickson* court held that timeliness does not depend on when the insurer first became aware of the action, but rather it depends on how quickly the insurer acted once it learned that its interests were not protected by existing parties. *Id.* at 888. We agree with that court's analysis.

■ Here, the insurer did not delay in taking the necessary steps to protect its rights once it learned of the potential default on the part· of the uninsured motorist. Burge sent a copy of the motion for default to Mid–Continent a few days before the hearing, but he did not send it a notice of the date of the default hearing. Mid–Continent received notice of the motion for default judgment on July 10, a Friday. Within only three working days of the receipt of that notice, Mid–Continent filed its motion to intervene. Though Mid–Continent was aware of the ongoing action against Sanchez, it had no knowledge of the suit's progress until it received the default motion. Before it received that motion, Mid–Continent did not know that Sanchez was in default.

■ ■ Clearly, the *Burge I* court recognized that Mid–Continent's situation was precarious because it was precluded from presenting its defenses and claims of comparative negligence. We believe that the *Burge I* court took this into account when it held that Mid–Continent was not bound by the judgment entered in *Burge I*, leaving Mid–Continent free to litigate Burge's comparative fault in *Burge II*. The court in *Burge II*, however, erroneously prevented Mid–Continent from doing this by granting Burge a summary judgment on those issues, thereby denying Mid–Continent its day in court. We further note that allowing Mid–Continent its day in court to litigate its contract defenses is especially important in light of Burge's other claims against Mid–Continent, includ-

ing claims for bad faith and punitive damages. Bad faith is determined by whether or not the insurer was justified in refusing coverage or offering less than the total coverage. *See* SCRA 1986, 13–1702 (Repl.Pamp. 1991) (defining the requirements for showing of bad faith failure to pay a first party claim); *see also United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 484–85, 709 P.2d 649, 653–54 (1985) (holding that insurer's failure to pay a claim does not constitute bad faith or malicious intent when legitimate questions of law or fact exist). Punitive damages can be awarded only upon a showing that the wrongdoer's conduct was malicious, willful, fraudulent, reckless, wanton, or in bad faith. SCRA 1986, 13–1827 (Repl. Pamp.1991) (setting forth the types of conduct that give rise to punitive damages); *see also Paiz v. State Farm Fire & Casualty Co.,* 118 N.M. 203, 211, 880 P.2d 300, 308 (1994) (holding there must be evidence of an "evil motive" or "a culpable mental state" to support an award of punitive damages). Mid–Continent's contract defenses pertaining to Burge's intoxication and comparative fault directly affect the issues of bad faith and punitive damages as well as the claimed violations of the UPA and the TPFA.

■ *The default of the uninsured motorist was applicable only to liability, reserving the determination of comparative negligence and apportionment of damages for the hearing on damages.* Our interpretation of *Burge I* court's ruling as to the effect of the default judgment against Mid–Continent is further bolstered by the fact that the default judgment applied only to the liability issue. After the default against Sanchez, Mid–Continent moved in *Burge I* to intervene to present evidence of Burge's comparative fault at the hearing on damages to be assessed against Sanchez. The *Burge I* court dismissed Mid–Continent's complaint, holding that the judgment had no binding effect on Mid–Continent, thereby reserving the issue of comparative fault for trial in *Burge II*. As we previously noted, Burge argues that Mid–Continent should have intervened in *Burge I* prior to the default against Sanchez on the issue of Sanchez's liability. Because Mid–Continent did not in-

tervene earlier, Burge maintains that the trial court in *Burge II* correctly held that once the default judgment was entered against Sanchez, Mid–Continent became liable to pay Burge's damages proximately caused by the accident up to the policy limits and it cannot thereafter litigate Burge's comparative fault in *Burge II*. We disagree.

■ ■ The question presented here is whether comparative negligence of another party or non-party is a question of liability admitted by a default or a question of damages subject to a hearing on damages after the default. We hold that a defaulting party admits only to the liability aspect of the complaint, thus reserving for the damages hearing a determination of damages in accordance with the application of comparative negligence and apportionment of damages under *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), and *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982); *see also* SCRA 1986, 13–2219 (comparative negligence; comparison among defendants or non-parties; general verdict) and 13–2220, Question No. 4 (comparative negligence; special verdict).

■ In accordance with our holding, we expressly overrule *Passino v. Cascade Steel Fabricators, Inc.*, 105 N.M. 457, 734 P.2d 235 (Ct.App.1986), *cert. quashed*, March 17, 1987. The *Passino* Court relied on *Gallegos v. Franklin*, 89 N.M. 118, 547 P.2d 1160 (Ct. App.), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976), for the proposition that "once default judgment has been entered, liability is not an issue, and the allegations of the complaint become findings of fact." 105 N.M. at 458, 734 P.2d at 236. In *Passino*, the Court held that the defaulting party waived its rights to the application of comparative negligence, concluding that the defendant cannot "avoid the consequences of its default by litigating its culpability in the damages hearing." *Id.* at 458, 734 P.2d at 236. This is no longer the rule in New Mexico.

■ ■ "[T]he law of comparative negligence in New Mexico requires the trier of fact determine negligence proportionately, and holds that a tortfeasor be held liable for damages only to the extent of his percentage of negligence." *St. Sauver v. New Mexico Peterbilt, Inc.*, 101 N.M. 84, 87, 678 P.2d 712, 715 (Ct.App.1984) (citing *Scott* and *Bartlett*). The Court in *Scott* "expressly anticipated that adaptations of various existing rules would have to be made on a case-by-case basis." *Tipton v. Texaco Inc.*, 103 N.M. 689, 691, 712 P.2d 1351, 1353 (1985). Under the facts in this case, the general rule on default judgments as stated in *Gallegos* must be adapted to apply the doctrine of comparative negligence. *See Tipton*, 103 N.M. at 693, 712 P.2d at 1355. We therefore hold that a defaulting party admits only to the liability of his or her portion of the damages. What must be determined after the entry of default is the dollar amount of the damages suffered by the injured party *and* the portion of those damages to be awarded against the defaulting party based upon the extent of its percentage of negligence.

■ Pursuant to its policy, Mid–Continent agreed to pay "*all sums to which the insured is legally entitled as damages.*" *See Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407, 410 (Okla.1993) ("[L]egally entitled to recover damages ... simply means that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the *extent of those damages.*" (Emphasis added)). That legal entitlement extends only to the proportionate fault of the wrongdoer as determined at the hearing on damages. Therefore, Mid–Continent is entitled to show the extent to which the damages, for which Sanchez is responsible, should be reduced as a result of Burge's comparative fault. Accordingly, the effect of the *Burge I* court's ruling was to correctly reserve the comparative fault issue to be tried in *Burge II*. The court in *Burge II*, however, erred by limiting evidence of Burge's comparative fault to the bad-faith issue. As a result of the *Burge II* court's ruling, Mid–Continent was denied the opportunity to litigate the proportionate fault of the wrongdoer thus preventing a jury determination of the sums to which the insured was "legally entitled to recover as damages".

■ *Conclusion.* For the foregoing reasons, we hold that the court in *Burge II* erroneously granted Burge's motion for partial summary judgment. Accordingly, we reverse and remand this case in its entirety. Mid–Continent will be allowed its day in court to present all its defenses under the policy on all issues of liability and damages for personal injury, including but not limited to Burge's comparative fault and intoxication, and all issues of breach of contract, bad faith, and violations of UPA and TPFA alleged by Burge and disputed by Mid–Continent.

■ **IT IS SO ORDERED.**

RANSOM and MINZNER, JJ., concur.

BACA, C.J., and McKINNON, J., dissenting.

BACA, Chief Justice (Dissenting).

■ I respectfully disagree with the majority's determination that the trial court erred in granting partial summary judgment in favor of Burge. Having received adequate notice of the claim filed against Sanchez and having opted not to timely intervene, I believe that Mid–Continent Casualty Company should be bound by the default judgment rendered against Sanchez in *Burge I.*

■ As a direct result of the terms of the uninsured motorist policy, the trial court granted summary judgment in favor of Burge. The pertinent language of the uninsured motorist policy states:

> *No judgment* against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability or such person or organization or of the amount of damages to which the insured is legally entitled *unless the insured has given the company adequate notice of filing and pendency of the action against the uninsured motorist by the insured.* (Emphasis added).

I read this paragraph as providing that if the insured sues the uninsured motorist directly, the insured can take the resulting judgment to the insurance carrier and receive payment on the judgment up to policy limits, provided the insurance carrier received adequate notice of the action and the defendant was in fact uninsured.

■ The central issue is whether "judgment" as used in this insurance policy includes default judgments. I find that for this policy it does. The fact that the judgment was by default is of no significance with regard to this particular policy because the policy does not define "judgment" to exclude a default judgment. Instead, the policy requires only that Sanchez was uninsured when the accident occurred, that Burge is legally entitled to coverage, and that he give Mid–Continent adequate notice of his action against Sanchez.

■ The record indicates that Sanchez was in fact uninsured when the accident occurred. The record also indicates that Burge satisfied his contractual duty to provide Mid–Continent with timely notice of the claim against Sanchez. Specifically, the record indicates that Burge filed an action against and served process on Sanchez. As required under the policy, he immediately notified Mid–Continent of the action. Burge also mailed Mid–Continent a copy of the motion for default judgment before filing that motion. Finally, the record clearly shows that Burge met his burden of proving legal entitlement to coverage. *See State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 572, 761 P.2d 446, 450 (Ct.App.), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988). After Sanchez failed to answer the complaint, Burge sought and obtained a default judgment. Having determined liability issues, the court held a subsequent hearing and determined Burge's damages. Burge established Sanchez' liability for the accident and the extent of that liability, thereby establishing legal entitlement to coverage. *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 240, 629 P.2d 231, 316 (1980) (stating that "[u]pon the default, the allegations of the complaint are taken as true"), *cert. denied,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Thus, Burge did everything required of him under the contract, including providing Mid–Continent with adequate notice.

■ Significantly, the burden of establishing comparative negligence was on Sanchez and Mid–Continent. *See Armstrong v.*

*Industrial Elec. & Equip. Serv.*, 97 N.M. 272, 274, 639 P.2d 81, 83 (Ct.App.1981). As of April 1991, Mid–Continent was aware that Burge drank heavily the night before the accident and that witness statements contradicted Burge's account of the accident. On June 11, 1992, over one month before the default judgment was rendered, Mid–Continent received complete medical records that showed Burge's blood-alcohol level at the hospital. Clearly, this information would have been useful to Sanchez in his own defense. Yet there is no indication that Mid–Continent attempted to provide Sanchez with the evidence in order to reduce or eliminate its own potential loss under the policy. By June 11, Mid–Continent had notice of the action and evidence implicating Burge's comparative negligence. Having no indication that Sanchez would answer and defend, it was incumbent upon Mid–Continent to plead and attempt to prove Burge's comparative negligence to protect itself under the policy. Burge had no duty to warn Mid–Continent that Sanchez might not adequately defend against his claim. Having received timely notice of the action and having failed to timely intervene, Mid–Continent can not now successfully claim a denial of procedural due process.

■ Both New Mexico and Oklahoma recognize that ambiguities in a policy will be construed in favor of the insured. *See, e.g., Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) ("When insurance contract is ambiguous, it must be construed against the insurance company as the drafter of the policy.") and *Littlefield v. State Farm Fire & Casualty Co.*, 857 P.2d 65, 69 (Okla.1993) ("Insurance contracts are contracts of adhesion. If susceptible of two constructions, the contract will be interpreted most favorably to the insured and against the insurance carrier."). Having drafted the uninsured motorist policy, Mid–Continent had an opportunity to unambiguously exclude default judgments from having conclusive effect. It is not unusual, and, indeed, quite common, for an action by an insured against an uninsured motorist to result in a default judgment. Nonetheless, Mid–Continent failed to draft such an exclusion into the policy. I would not read such

an exclusion into the policy. *Knowles*, 113 N.M. at 705, 832 P.2d at 396. Once Burge met his contractual obligations, Mid–Continent became contractually obligated to provide coverage. Thus, the trial court in *Burge II* properly granted partial summary judgment by construing the policy in favor of Burge and concluding that Mid–Continent was contractually obligated to pay.

■ Mid–Continent asserts that if the uninsured motorist policy is construed to include default judgments, Mid–Continent would be deprived of an opportunity to litigate Burge's comparative negligence. I disagree.

■ It is well settled that an insurance carrier has a right to intervene in an action between an insured and an uninsured motorist. *Lima v. Chambers*, 657 P.2d 279, 281 (Utah 1982) (citing cases from various jurisdictions holding insurance carrier has right to intervene in action between insured and uninsured motorist). Intervention is proper when a person (1) has an interest relating to the subject matter of the action; (2) is so situated that the disposition of the action may impair or impede the ability to protect his interest; and (3) the interest is not adequately protected by existing parties. SCRA 1986, 1–024(A)(2) (Repl.Pamp.1992) (stating requirements for intervention as of right). Clearly, Mid–Continent knew it had an interest in the action between Burge and Sanchez and required notice of any action filed because under the terms of the contract, the resulting judgment would fix Mid–Continent's contractual obligation to satisfy the judgment within policy limits. *See Lima*, 657 P.2d at 281. Nonetheless, Mid–Continent presumably believed that Sanchez could and would adequately protect its interest. It was only after the default judgment was rendered that Mid–Continent decided to intervene because Sanchez was not adequately protecting its interest.

■ The peculiar nature of uninsured motorist litigation suggests that an insurance carrier contemplating the insured's comparative negligence may not be adequately represented by the uninsured motorist. While it may appear on the surface that the unin-

sured tortfeasor could adequately represent the insurance carrier's interest in the action, such is not necessarily the case. Adequate representation often depends on whether there is a divergence of interest between the proposed intervenor and the party or on how effectively the party could represent the proposed intervenor in light of a legal disability or the trial strategy that the party may elect. *Alsbach v. Bader*, 616 S.W.2d 147, 151 (Mo. Ct.App.1981). "Generally, where the applicant's interest is different from that of an existing party, the applicant's interest is not represented." *Lima*, 657 P.2d at 283. "Closely related to the question of similarity of interests is whether the interest of the applicant, even if assumed to be represented, is represented diligently. Representation is considered inadequate if the original party is not diligent in the defense of the action or allows a default judgment to be entered." *Id.*

Where an uninsured defends pro se, it may be difficult to imagine the insurer's interest to be adequately represented. *Id.* Additionally, an uninsured motorist, especially one who has no substantial assets to lose, has little if any incentive to diligently defend or, for that matter, to file a timely answer to the complaint. Similarly, an uninsured motorist, presuming his own total fault, may have no incentive to appear and defend in the action, thus conceding total fault. Certainly, an uninsured motorist who does not appear cannot adequately represent the insurance carrier's interest. *Id.; State v. Craig*, 364 S.W.2d 343, 346 (Mo.Ct.App.1963). An insurance carrier, whose contractual obligations become fixed by the resulting default judgment, must seek to intervene before that judgment is rendered. By neglecting to do so, the insurance carrier is in no better position than the defaulting uninsured motorist. Thus, having adequate notice of the action between Burge and Sanchez, and with cause and opportunity to intervene, Mid–Continent was afforded an opportunity to litigate the issue of comparative negligence.

Various jurisdictions apply the rule that an insurance carrier that neglects to intervene into an action between its insured and an uninsured motorist after receiving adequate notice of the action is often bound to the resulting judgment. *See, e.g., Keel v. MFA Ins. Co.,* 553 P.2d 153, 158–59 (Okla. 1976) (holding that where insurance carrier had adequate notice of suit between insured and uninsured motorist, it will be bound to the resulting judgment); *Guillan v. Watts,* 249 Kan. 606, 822 P.2d 582, 590 (Kan.1991) (holding that insurance carrier, with notice of action between insured and uninsured motorist and elects not to intervene, becomes bound by judgment, whether or not judgment was litigated); *Briggs v. American Family Mut. Ins. Co.,* 833 P.2d 859, 862 (Colo.Ct.App.1992) (invalidating consent to sue clause and binding insurance carrier to default judgment in order to prevent relitigating liability and damages and to effectuate purpose of uninsured motorist policy); *Champion Ins. Co. v. Denney,* 555 So.2d 137, 139–40 (Ala.1989) (holding that insurance carrier will be bound by default judgment rendered in action by insured against uninsured motorist if "it had full notice and adequate opportunity to intervene and present any defenses and arguments necessary to protect its position"). I view this rule as being necessary to effectuate the intent of uninsured motorist coverage and the strong public policy against multiple litigation where the issues relating to the same subject matter can be resolved in one action. *Keel,* 553 P.2d at 158. To require the insured to proceed against the insurance carrier after having sued the uninsured tortfeasor "will put the insured plaintiff to the expense and delay of trying two lawsuits in order to collect one judgment." *Cf. Associated Indem. Corp. v. Cannon,* 536 P.2d 920, 923 (Okla.1975) (quoting *Holt v. Bell,* 392 P.2d 361 (Okla.1964) (Jackson, J., dissenting) (discussing reason why insured should not be required to first sue uninsured motorist before suing insurance carrier), *overruled by Keel,* 553 P.2d 153).

The foregoing policies would be seriously undermined if an insurance carrier is allowed to sleep while its rights are litigated and, after it awakens to an unfavorable judgment, to relitigate the same issues. An insurance carrier who fails to intervene after receiving adequate notice of the pending action places an additional burden on the in-

jured party by requiring him to litigate his claim twice. This serves neither the purpose of the uninsured motorist policy nor judicial economy. I conclude that for purposes of the uninsured motorist policy between Burge and Mid–Continent, "judgment" includes default judgment. Mid–Continent received timely notice of the action between Burge and Sanchez. Consequently, Mid–Continent is contractually obligated to the resulting judgment.

■ Mid–Continent argues that if it had intervened in *Burge I* and argued that Sanchez was not liable or only partially liable, it would have been in an adversarial position with Burge, creating a conflict of interest. Thus, Mid–Continent argues, the only appropriate forum to litigate Burge's comparative fault was in *Burge II*. Although a conflict may arise, I disagree that it precludes intervention in this context.

■ I find *Briggs* particularly instructive. There, the insurance carrier argued that it could not be bound to a default judgment from an action between its insured and an uninsured motorist because intervention would have created a conflict of interest with its insured. *Briggs*, 833 P.2d at 863. The appellate court disagreed, stating "the insurer will not be undertaking the defense of the uninsured motorist by intervening, even though it may align itself on certain issues." *Id.*; *cf. Romero v. Felter*, 83 N.M. 736, 737–38, 497 P.2d 738, 739–40 (1972) (recognizing that although there may be multiple individuals on "each side" of an action, they remain separate "parties"). The court explained:

> [T]he potential for such conflict is inherent in uninsured motorist coverage. The conflict would not be extinguished, as the insurer implies, by requiring the insured to relitigate liability and damages in a separate action against the insurer. Many of the same conflicts would exist in the separate action as in a consolidated action where the insured and the insurer disagree on the amount of damages.

*Briggs*, 833 P.2d at 863 (Citations omitted). The conflict of interest that Mid–Continent argues would have resulted had it intervened into *Burge I* was equally possible in *Burge II*. Indeed, Mid–Continent's interests of minimizing its loss on the claim conflicts with Burge's interest of maximizing his coverage. The conflict effectively existed even from the moment that the accident occurred. The policy against multiple litigation outweighs the possibility of a conflict of interest. *See Vernon Fire & Casualty Ins. Co. v. Matney*, 170 Ind.App. 45, 351 N.E.2d 60, 65 (1976) (stating policy against multiple litigation and possible conflicting results renders conflict of interest insufficient to prevent insurance carrier from defending interests by intervention). The conflict is unavoidable and should not preclude intervention by an insurance carrier into an action between its insured and an uninsured motorist.

■ While I recognize the strong public policy disfavoring default judgments, *see Sundance Mechanical & Util. v. Atlas*, 109 N.M. 683, 691, 789 P.2d 1250, 1258 (1990), that policy is not hereby subverted. Rather, this approach emphasizes an insurer's obligation to honor the insurance policy, which it wrote to include judgments by default, in order to fulfill the policy's purpose. Further, I fully recognize an insurance carrier's right to challenge its insured's claim for coverage by asserting comparative negligence. However, an insurance carrier, believing its insured is comparatively negligent and having adequate notice and opportunity, cannot neglect to assert that claim only to burden the insured and the courts with multiple suits. Accordingly, I conclude that the trial court in *Burge II* properly granted partial summary judgment.

■ For the reasons stated, I respectfully dissent.

McKINNON, Justice (dissenting).

■ I respectfully dissent and join in Chief Justice Baca's dissent. In addition I offer the following comments.

■ Mid–Continent was bound by the default judgment because of its contract with Burge and because the only defenses it had were derivative of those available to Sanchez. The crucial flaw in the majority's analysis is its failure to recognize that Mid–Continent did practically nothing in the Taos County action (*Burge I*) to protect its derivative

defenses when Burge sued Sanchez. This failure resulted in a default judgment which was never directly attacked but which determined that Sanchez's conduct was *"the sole and proximate cause"* of the accident, this crucial fact not being noted or commented on by the majority. In the Bernalillo County action (*Burge II*) the trial court correctly granted partial summary judgment to Burge on the issue of fault—the sole proximate cause of the accident—indicating that Mid-Continent was "stuck" because of its inaction, not that Mid-Continent was liable "once the default judgment was entered," as claimed by the majority.

the majority holds that Mid-Continent was denied "procedural due process" when the *Burge II* court granted Burge's motion for partial summary judgment. It asserts that Mid-Continent was denied its "day in court" and therefore, an opportunity to litigate the comparative fault issue. I strongly disagree because overlooked by the majority is the fact that Mid-Continent timely intervened but failed or refused to move that the default judgment be set aside. In none of the cases cited by the majority was it held that denial of due process occurs when an insurance company intervenes but fails, as here, to move to set aside a default judgment. Indeed, the intervention was timely as in *Cooper, supra,* even though it occurred after judgment had been entered. Clearly, Mid-Continent was given more than adequate notice and an opportunity to protect its interests by intervening and moving to set aside the default judgment. There was no denial of procedural due process.

As early as 1990 Mid-Continent knew Burge was demanding uninsured coverage on his *substantial* claim against Sanchez, and as part of its investigation confirmed his uninsured status. Shortly after *Burge I* was filed, Burge furnished Mid-Continent with a copy of the complaint, this being more than a month before the motion for default judgment was mailed to Mid-Continent. On July 10, 1992, Mid-Continent was sent notification of the default judgment and a hearing date for *damages only* on August 24. On July 15, Mid-Continent sought intervention, but at no time did it ever move that the default judgment be set aside, although its counsel later

admitted that he could have done so. Further, Mid-Continent never requested a hearing on its motion to intervene and never made a motion to stay or consolidate the proceedings in *Burge II.* Obviously, and directly contrary to the majority's claim, Mid-Continent did *not* do everything it could to intervene and not be bound by the default judgment. Finally, the complaint-in-intervention was dismissed on January 24, 1993, over two months after entry of judgment awarding damages to Burge in accordance with the hearing held on August 24, 1992.

Without referring to any language in the order of dismissal or to any other support in the *Burge I* record, the majority asserts that the dismissal was for the purpose of "allowing all of Mid-Continent's issues to be heard in the *Burge II* suit." Except for a few pleadings and other papers filed in the *Burge I* court, neither the record nor the transcript of proceedings was before the *Burge II* court or this Court. Thus, the majority is necessarily speculating about what the court in *Burge I* intended when it dismissed the complaint-in-intervention. This is especially important because the majority fails to address the crucial language of the default judgment and only discusses the language of the second judgment in isolation. However, the two judgments can be interpreted harmoniously without much effort.

The crucial language of the default judgment states:

> The averments of the complaint are hereby *deemed to be findings of fact; and the Court specifically finds that the negligent acts of the Defendants are the sole and proximate cause* of the motorcycle-motor vehicle collision which is the subject matter of the litigation and the *sole proximate cause* of the injuries and damages suffered by Plaintiff as a result of the subject collision.... Plaintiff shall obtain an award of *damages* against Defendants MICHAEL L. SANCHEZ and DELORES SANCHEZ *after further hearing on the issue of damages* and the presentation of evidence by Plaintiff. (Emphasis added.)

This language is not ambiguous or otherwise mysterious. The *Burge I* court necessarily determined that Sanchez was 100% at fault since his conduct was the "sole and proximate cause" of the accident and it set a

hearing to determine the amount of damages suffered based on evidence presented by Burge.[1] In the face of this language, Mid–Continent did absolutely nothing to set aside the default judgment.

■ Over a month after entry of the default judgment, the hearing on damages was held. The printed language of the order awarded damages to Burge in the amount of $350,000 but the court noted in handwriting the following: "This judgment has no binding effect upon the plaintiff in intervention, Mid–Continent Casualty Company." The *Burge II* court presumably read the two judgments harmoniously to mean that fault had been determined by the default judgment but Mid–Continent had not had its day in court to contest the amount of the damages. This approach was imminently reasonable, especially since no action had been taken by Mid–Continent to set aside the default judgment.

■ As noted above, *any defenses* of Mid–Continent were derivative of those available to Sanchez since it stood "in the shoes of the uninsured motorist with regard to the question whether [the uninsured motorist] was negligent and with regard to his defenses such as contributory negligence." *Hendren v. Allstate Ins. Co.*, 100 N.M. 506, 510, 672 P.2d 1137, 1141 (Ct.App.1983) (quoting *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565 (7th Cir.1978)). Consequently, Mid–Continent was in privity with Sanchez and the legal effect of the default judgment was to bar a subsequent suit on issues that *could have been determined* in the first action. *See First State Bank v. Muzio*, 100 N.M. 98, 666 P.2d 777 (1983) (holding that parties and their privies are barred from raising defenses in subsequent actions after default judgment is entered). The affirmative defense of contributory negligence had to be raised by Sanchez in his answer to the complaint, *see* Rule 1–008(C) NMRA 1996, or by Mid–Continent when it either sought intervention or thereafter. But more importantly, Mid–Continent was required to move that the default judgment (a judgment that determined that

Sanchez was 100% at fault) be set aside. Having failed to do so, Mid–Continent became bound under the judgment to pay according to its contract.

■ Mid–Continent, having failed to effectively intervene and set aside the default judgment, should be barred from further litigation of its derivative defenses. Thus, I would affirm the trial court.

---

1. I believe the majority errs in using this case to overrule *Passino v. Cascade Steel Fabricators, Inc.*, 105 N.M. 457, 734 P.2d 235 (Ct.App.1986), which prohibited a defaulting defendant from litigating comparative fault at a damages-only hearing. Here, there was no fault to apportion since Sanchez's conduct was *already* found to be the sole and proximate cause of the accident and the injuries. Under these facts, application of the holding in *Passino* that "[b]y defaulting, defendant waived its right to the application of comparative negligence and the apportionment of damages," *id.* at 459, 734 P.2d at 237, would be correct.