STATE EX REL. TOM BERGIN v. ROBERT F. FITZSIMMONS. BETTY W. WASHBURN, INTERVENER.[1]

August 3, 1948.

No. 34,802.

---

[1]Reported in 33 N. W. (2d) 854.

558

Sidney S. *Feinberg*, for appellant.

Frank J. *Williams*, Assistant County Attorney, for Robert F. Fitzsimmons, respondent.

Irving R. *Brand*, for intervener.

KNUTSON, JUSTICE.

Reuben E. Holmquist was elected court commissioner of Hennepin county, this state, at the general election held in November 1946. He died on May 14, 1947, while holding that office. Pursuant to M. S. A. 489.05, the district court of Hennepin county appointed intervener, Betty W. Washburn, to fill the vacancy so created. She qualified and has since that time acted as court commissioner. We held in State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652, that the appointment was proper and that § 489.05 governed in filling the vacancy.

On June 16, 1948, Tom Bergin, relator, presented an affidavit of candidacy for the office of court commissioner to the county auditor of Hennepin county and tendered the statutory filing fee. The auditor, respondent here, refused to accept the affidavit or fee, contending that there was no election for court commissioner in the year 1948. An order to show cause was obtained by relator, directing respondent to accept his affidavit and fee, or show cause why he should not do so. Thereupon the matter came on for hearing before

the district court of Hennepin county. An order was made denying the relief sought by relator and dismissing the proceeding. This appeal is from such order.

It is the contention of relator that under § 489.05 the appointment of intervener holds over only until January 1, 1949, and that her successor is to be elected at the general election in November 1948, the person so elected to hold office for two years, or until January 1, 1951, at which time someone will be elected to fill the regular four-year term. Relator concedes that no one can be elected for a full four-year term in 1948, but contends that the election must be held during that year nevertheless and that the person so elected will hold office for two years only.

Respondent and intervener contend that no court commissioner can be elected in 1948 and that intervener's appointment holds over until January 1, 1951, her successor to be elected at the general election in the year 1950 for the regular four-year term.

The applicable statutes are § 489.01, which reads:

"In each county in the state there shall be elected at the general election in 1918 a court commissioner. The term of office of the court commissioner shall be four years and until his successor is elected and qualified, and begin on the first Monday in January next succeeding his election. This office shall be filled by election every four years thereafter. One person may hold at the same time the offices of court commissioner and probate judge."

and § 489.05, which reads:

"When a vacancy occurs in the office of court commissioner, the judge of the district court of the county shall appoint some competent person to fill such vacancy, who shall give the bond and take the oath by law required, and shall hold his office until the next general election, and until his successor qualifies."

1. The fundamental aim of construction of a statute is to ascertain and give effect to the intention of the legislature. In determining the legislative intent, we should consider the legislative history of the act, the subject matter as a whole, the purpose of the legisla-

tion, and the objects intended to be secured thereby. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11. The legislative scheme or plan by which the general purpose of the act is to be carried out may be considered. United States v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. ed. 986. Statutes *in pari materia* are to be construed with reference to each other. 6 Dunnell, Dig. & Supp. § 8984.

2. When the legislature enacted L. 1913, c. 458, it is obvious it did so for the purpose of establishing uniformity in the election of county officers and that it intended that all county officers included within the act should be elected during the same year. It provided that the terms of office should be four years after the 1914 election, and that "said offices shall be filled by election every four years thereafter." Clerks of court and court commissioners were not included within the act. This act was amended by L. 1915, c. 168, so as to include clerks of court and court commissioners. The 1915 act provided that there should be elected at the general election in 1918 the enumerated county officers, including a court commissioner, whose term should be for four years, beginning on the first Monday of January next succeeding said election (that is, the election in 1918) and that said offices should be filled by election every four years thereafter. The legislature made provision for filling vacancies in these offices and further provided:

"* * * any appointment made to fill a vacancy in any of the said offices *shall be for the balance of such entire term.*" (Italics supplied.)

All acts and parts of acts inconsistent therewith were repealed.

We held this act to be unconstitutional insofar as it affected clerks of court, for the reason that the term of the clerk of court is fixed at four years by Minn. Const. art. 6, § 13, and no legislative act could abridge or extend the constitutional term of this office. State ex rel. Abel v. Berg, 132 Minn. 426, 157 N. W. 652. Except as so limited, the statute has remained the same since it was enacted, and all county officers included therein, with the exception of clerks of court, have been elected at the same general elections at four-

year intervals following 1918. In Imsdahl v. Weeks, 158 Minn. 512, 197 N. W. 973, we held that the object of having all county officers elected at the same general election was proper legislation and that uniformity with respect to the time of election of county officers was desirable.

In State ex rel. Evens v. Borgen, 189 Minn. 216, 248 N. W. 744 (rehearing denied, 189 Minn. 222, 249 N. W. 183), we had before us a case involving a vacancy in the office of the sheriff of St. Louis county. At the general election in November 1930, one Erickson was elected sheriff of that county. He was removed from office thereafter because he was not a citizen. On December 14, 1931, the county board filled the vacancy by appointing one Owens as sheriff. The appeal involved the question whether the term of the appointee, Owens, expired on the first Monday in January following the 1932 election or if it would hold over until the first Monday in January following the 1934 election. After thoroughly considering the effect of L. 1913, c. 458, as amended by L. 1915, c. 168, we said (189 Minn. 219, 248 N. W. 745):

"* * * It is perfectly clear from the wording of the above act of 1913 as amended by that of 1915 that the legislature intended to make the term of the county offices named four years and that all such offices in every county of the state should be filled at the same general election. *In order to achieve that object, the appointments to fill vacancies must be for the remainder of the unexpired term.* Otherwise the plan of electing all county officers in every county of the state at the same election would be quickly disrupted by deaths, resignations, and removals. * * * It is true that an elective office should not be filled by appointment for a longer period than reasonably necessary. But an appointment for the unexpired term cannot be held unreasonable.

\*    \*    \*    \*    \*

"This language [referring to 1 Mason Minn. St. 1927, § 659] is perfectly plain, and Owen[s] by his appointment holds the office of sheriff for the remainder of Erickson's unexpired term, namely, until the first Monday in January, 1935. Hence no votes for sheriff

could be lawfully cast at the general election of 1932." (Italics supplied.)

In denying an application for reargument, we further emphasized this rule by saying (189 Minn. 223, 249 N. W. 183) :

"* * * It is perfectly plain that the effect of this legislation was that none of the county offices named therein could be voted for at any general election except the one that occurred at a four-year interval counting from the general election of 1914. When L. 1913, p. 668, c. 458, was enacted there was no provision of law, nor has there been since, *under which, if a vacancy occurred in one of the offices named, it could be filled by an election for the remainder of the unexpired term; but there was a statute, R. L. 1905, § 425, 1 Mason Minn. St. 1927, § 659, which authorized the county board to fill the vacancy by appointment, and such appointee 'shall hold for the remainder of the unexpired term, and until his successor qualifies.' L. 1915, p. 233, c. 168, serves only to emphasize the intention of the legislature to have elections for all county officers in the state at one and the same general election, which must occur at a four-year interval counting from the general election of 1914.*" (Italics supplied.)

In drafting M. S. A. 1941, the language of L. 1915, c. 168, became §§ 382.01 and 382.02, with a few minor changes in the language which did not affect the plan or operation of the statute. At the same time §§ 489.01 to 489.05 were included. The provisions of M. S. A. 1941, chapters 382 and 489, are inconsistent.

In drafting M. S. A. 1945, which was adopted by the legislature and is now the law, provisions for electing and filling vacancies in the office of clerk of court were eliminated from §§ 382.01 and 382.02, due no doubt to the decision in State ex rel. Abel v. Berg, 132 Minn. 426, 157 N. W. 652, *supra*. Provisions for electing and filling vacancies in the office of court commissioner were likewise removed from §§ 382.01 and 382.02 and were incorporated in §§ 489.01 to 489.05, thereby eliminating the inconsistency which had formerly existed between the above-mentioned statutory provisions. There

can be no doubt that §§ 489.01 and 489.05 now govern both the election of court commissioners and the mode of filling vacancies in this office. State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652, *supra*.

It is significant that the legislature carried into § 489.01, in the 1945 draft, the provisions of L. 1915, c. 168, stating that 1918 should serve as the basic year for determining the four-year intervals at which county officers should be elected. From this we can plainly see that the legislature intended to continue electing court commissioners at the same time as other county officers. It must therefore follow that there can be no election for such officers during the year 1948. State ex rel. Evens v. Borgen, 189 Minn. 216, 248 N. W. 744, *supra*. In order to give effect to the obvious legislative intent of electing court commissioners at the same time as other county officers, we must read § 489.05 together with other parts of the chapter, all of which are intended to cover the same subject matter and to effect the same result. Consequently, the words of § 489.05, that he "shall hold his office until the next general election," must be construed to read "until the next general election, at which a court commissioner may be elected." As so construed, it follows that the appointment of the intervener will hold over until the first of January in the year following the general election in 1950.

Relator relies largely upon Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758. In that case, one Cadieux was elected county commissioner of Red Lake county in 1912. He died in 1913, and one Delorme was appointed to fill the vacancy to serve until such vacancy was filled as provided by law. At the 1914 election, one Prenevost was declared to be elected. The election was contested by Delorme, who contended, among other things, that the election was a nullity for the reason that his appointment held over for the balance of Cadieux' term. We held that G. S. 1913, § 5727 (now M. S. A. 351.06), governed rather than G. S. 1913, § 680 (now M. S. A. 375.03). The pertinent part of § 351.06 reads:

"Unless otherwise provided for, when a vacancy in an elective office is authorized to be filled by appointment, such appointment

shall continue until the next general election occurring after there is sufficient time to give the notice prescribed by law, and until a successor is elected and has qualified."

And the pertinent part of § 375.03 reads:

"In each new county, and in each county which shall be entitled to an increase in the number of commissioners, there shall be elected at the next general election a commissioner from each odd-numbered district for a term of two years, and one from each even-numbered district for a term of four years; and thereafter all commissioners shall be elected for a term of four years, except that elections or appointments to fill vacancies shall be for the unexpired term only."

We need not determine here whether Prenevost v. Delorme was correctly decided. It is sufficient to say that in the case before us § 351.06 does not govern, for the reason that provision for filling a vacancy in the office of court commissioner is governed by § 489.05. Hence, Prenevost v. Delorme is no authority for the contention of relator. Section 351.06 becomes operative only when no other method of filling a vacancy is provided. That is not the case here.

3. The trial court correctly held that there can be no election for court commissioner during the year 1948, and the decision is affirmed.

Affirmed.

PETERSON, JUSTICE (concurring specially).

I concur in the result. It is not necessary to decide whether a court commissioner is a state or county officer. Consequently, I withhold any opinion with respect to that question.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

I am in accord with the view expressed by Mr. Justice Peterson.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On September 17, 1948, the following opinion was filed:

PER CURIAM.

Appellant appeals from the clerk's taxation of costs and disbursements in favor of intervener.

By intervention, a third party becomes a party to a suit pending between others. Faricy v. St. Paul Inv. & Sav. Society, 110 Minn. 311, 125 N. W. 676. An intervener is liable for costs if he fails to sustain his claim. McKinley v. National Citizens Bank, 127 Minn. 212, 149 N. W. 295. He is entitled to recover costs if he prevails. 14 Am. Jur., Costs, § 31; 20 C. J. S., Costs, § 105.

In this case, respondent properly took a neutral position, and intervener was the real party in interest. She prevailed on appeal. A prevailing party is entitled to disbursements as a matter of right under M. S. A. 607.01. A prevailing party is entitled to costs under Rule XV of this court. 222 Minn. xxxvii.

Costs and disbursements were properly taxed by the clerk in favor of intervener, and the allowance thereof is affirmed.