Edward C. ERICKSON, et al.,
Respondents,

v.

Sauletta Kay BENNETT, Respondent,

St. Paul Fire and Marine Insurance Company, applicant for intervention, Appellant.

No. CX–87–62.

Court of Appeals of Minnesota.

July 28, 1987.

Michael J. Holt, Holt and Anderson, Ltd., Apple Valley, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Sauletta Kay Bennett, pro se.

Kay Nord Hunt, Thomas D. Jensen, Richard A. Lind, Lommen, Nelson, Cole & Stageberg, Minneapolis, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and LESLIE and MULALLEY *, JJ.

## OPINION

WOZNIAK, Judge.

St. Paul Fire & Marine Insurance Company (St. Paul) appeals from an order denying its motion to intervene in this personal injury action and to vacate a default judgment entered in favor of respondents Edward and Rosella Erickson. We reverse and remand.

## FACTS

On November 1, 1983, Edward Erickson was injured when the car he was driving was hit by a car owned and driven by Sauletta Bennett. The accident occurred when Erickson attempted to make a left turn across an intersection and was struck by Bennett's oncoming car. Police officers investigating the accident took statements from both drivers. Erickson stated he thought he had time to make the turn, but that he must have underestimated the speed of Bennett's car. Bennett told the officers she was traveling less than 30 m.p.h. and that the traffic light turned yellow just as she entered the intersection.

Erickson had automobile insurance coverage through St. Paul. Erickson notified St. Paul of the accident and began receiving no-fault benefits. Because Bennett was uninsured at the time of the accident, Erickson also presented a claim for uninsured motorist benefits. Under the terms of Erickson's insurance policy, St. Paul agreed to pay for injuries caused by an uninsured driver, but only if Erickson was legally entitled to receive the damages.[1]

St. Paul denied Erickson's claim because he was not legally entitled to receive damages. St. Paul maintained that Erickson's injuries resulted from his own negligence in failing to yield the right-of-way to oncoming traffic before attempting his left turn. St. Paul refused to arbitrate Erickson's claim because the policy contained no provision for mandatory arbitration. Instead, St. Paul indicated that Erickson must pursue a claim against the uninsured motorist.

Erickson then brought this action against Bennett, serving her with a summons and complaint in February 1986. St. Paul also received a copy of the summons and complaint in February. Bennett did not respond to the complaint, and a default hearing was scheduled for July 7, 1986. St. Paul was not informed of the progress of the lawsuit until it received a phone call from Erickson's attorney on July 3, 1986, advising St. Paul that Erickson intended to obtain a default judgment against Bennett at the hearing scheduled for July 7, 1986. Because of the intervening weekend and holiday, St. Paul had only one day's oral notice of the hearing. Erickson advised St. Paul of the hearing by letter dated July 2, 1986, but St. Paul did not receive the letter until either July 7 or 8. St. Paul did not attend the default hearing.

At the hearing, Erickson was the only witness to testify. In addition to this testimony, the trial court received the affidavit of an accident reconstructionist offering his opinion that Bennett was speeding and ran a red light when her car hit Erickson's; the affidavit of a passenger in Erickson's car at the time of the accident stating his belief that Bennett was speeding; the police accident report; medical reports concerning the extent of Erickson's disability as a result of his injuries; and medical bills and no-fault payment records.

The trial court concluded that Bennett was liable for Erickson's damages because she was speeding and ran a red light when

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The policy provides in pertinent part:
   Uninsured Motorist Protection Pak II pays you, your family, and passengers in your vehicle for injuries or death caused by an uninsured or hit-and-run driver. But only if you or they are legally entitled to receive damages. We'll pay all damages that the owner or operator of the uninsured or hit-and-run vehicle owes but can't pay.
   But we won't pay more than $100,000 for any one accident or incident no matter how many vehicles are covered.

she hit Erickson's car. The court awarded Erickson $102,776.70 and the default judgment was entered on July 21, 1986. Erickson then presented a copy of the judgment to St. Paul, requesting uninsured motorist benefits that he was now "legally entitled" to recover under the terms of the policy. St. Paul, however, did not respond to Erickson's claim, so on August 22, 1986, he brought a declaratory judgment action against St. Paul seeking to recover his uninsured motorist benefits to the extent of his policy.[2]

On October 2, 1986, St. Paul filed a notice of intervention, indicating its intention to intervene in the action between Erickson and Bennett for purposes of setting aside the default judgment and interposing an answer on behalf of Bennett. The trial court, however, denied St. Paul's subsequent motion to intervene as a matter of right under Minn.R.Civ.P. 24.01, explaining that the intervention was not timely and that no basis existed for vacating the judgment under Rule 60.02.

### ISSUES

1. Did the trial court err in denying St. Paul's posttrial motion to intervene?

2. Did the trial court err in refusing to vacate the default judgment?

### ANALYSIS

1. In reviewing orders concerning intervention as of right under Minn.R.Civ.P. 24.01, this court will independently assess the appropriateness of the order.[3] *Norman v. Refsland*, 383 N.W.2d 673, 676 (Minn.1986). We are not held to a standard of review requiring a clear abuse of discretion before we may reverse a trial court's denial of a motion to intervene as a matter of right. *Id.*

Rule 24.01 establishes a four-part test that a nonparty must meet before being allowed to intervene as a matter of right: (1) a timely application for intervention; (2) an interest relating to the property or transaction which is the subject of the action; (3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) a showing that the party is not adequately represented by the existing parties. *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 207 (Minn.1986).

Unquestionably, if its application was timely, St. Paul had a right to intervene under the requirements of Rule 24.01 since its rights were being litigated. The issues raised in this personal injury action between Erickson and Bennett for liability and damages are the identical issues which determine St. Paul's liability under the insurance policy which gives rise to St. Paul's contractual duty to pay Erickson. St. Paul has a direct interest in the matter of litigation and cannot, as a practical matter given the facts in this case, protect its interest unless it is allowed to intervene. St. Paul is not adequately represented by the existing parties, as evidenced by Bennett's allowing the matter to go to default.

The trial court denied intervention because the motion was untimely. Under the special circumstances of this case, we believe the trial court erred. The timeliness of an application to intervene must be determined by the particular circumstances, including such factors as "how far the suit has progressed, the reason for any delay in seeking intervention, and any prejudice to the existing parties because of a delay." *Id.*

St. Paul moved to intervene after the default hearing and after judgment was entered. Posttrial intervention is not

---

2. The trial court has since ruled in the declaratory judgment action that St. Paul is bound by the default judgment. That matter is the subject of a separate appeal before this court.

3. Rule 24.01 provides:

   Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. Minn.R.Civ.P. 24.01.

viewed favorably, *Brakke v. Beardsley*, 279 N.W.2d 798, 801 (Minn.1979), and is not allowed where circumstances show the would-be intervenor was aware of the suit and permitted the trial to proceed, waiting to see if the decision would be favorable to its interests. *See State Automobile & Casualty Underwriters v. Lee*, 257 N.W.2d 573, 576 (Minn.1977). The offensiveness of this approach, however, is not present in this litigation for two reasons. First, a default hearing is not considered a trial, but is an inquiry before the judge. *See* 2A D. Herr & R. Haydock, *Minnesota Practice* § 55.18 (2d ed. 1985). Second, St. Paul did not sit back, waiting to act only if the default hearing resulted in an adverse decision. St. Paul had insufficient notice of the hearing to permit immediate intervention and is now only seeking to intervene for the purpose of having the issues of liability and damages determined in a full adversary proceeding.

The spirit behind Rule 24 is to encourage all legitimate interventions, and the rule is to be liberally applied. *Engelrup v. Potter*, 302 Minn. 157, 166, 224 N.W.2d 484, 489 (1974). Rule 24 is designed to protect nonparties from having their interests adversely affected by litigation conducted without their participation. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir.1977) (construing the analogous Federal Rule 24(a)). Although St. Paul was aware of the pending suit against Bennett in February 1986, it had no knowledge of the progress of the suit until July 3, 1986, when Erickson's attorney informed St. Paul of the default hearing scheduled for July 7, 1986. St. Paul had no knowledge before then that Bennett was in default.

Under these circumstances, timeliness does not turn on when St. Paul first became aware of the action, but rather on how quickly it acted once it learned that its interests were not protected by the existing parties. *See id.* at 264. Aware that its interests were not being adequately represented, St. Paul acted promptly to intervene, filing its motion within the time period in which Bennett could have taken an appeal. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 398, 97 S.Ct. 2464, 2471–72, 53 L.Ed.2d 423, *reh'g denied*, 434 U.S. 989, 98 S.Ct. 623, 54 L.Ed.2d 485 (1977).

That St. Paul did not attend the default hearing is irrelevant. At the time of the hearing, St. Paul was not a party to the action and had no standing to be heard. St. Paul had first to seek intervention following the procedures set forth in Minn.R. Civ.P. 24.03, which requires 30 days' notice of an applicant's intent to intervene.[4] Even if St. Paul had served a notice of intervention when it learned of the hearing, intervention could not have been accomplished until after the default hearing. Although the rule allows a party to intervene upon written consent, given Erickson's subsequent opposition to the motion, his consent could not have been obtained. St. Paul had no choice under the circumstances but to seek intervention after the default hearing. St. Paul should have the right to dispute the questions which make it liable on its contract and should not be penalized when it was put on notice of the default hearing in an untimely manner.

■ Allowing St. Paul to intervene will slightly prejudice Erickson, since he will now incur the expense of litigating his claim in a full adversary proceeding. The prejudice he will experience, however, is

4. Rule 24.03 provides:

A person desiring to intervene shall serve on all parties to the action and file a notice of intervention which shall state that in the absence of objection by an existing party to the action within 30 days after service thereof upon the parties such intervention shall deem to have been accomplished. The notice of intervention shall be accompanied by a pleading setting forth the nature and extent of every claim or defense as to which interven-

tion is sought and the reasons for the claim of entitlement to intervention. Within 30 days after service upon him of a notice of objection to intervention, the party seeking intervention shall serve a motion to intervene upon all parties as provided in Rule 5.

Upon written consent of all parties to the action, anyone may intervene under this rule without notice.

Minn.R.Civ.P. 24.03.

outweighed by the possibility that St. Paul may be bound by a judgment which followed a hearing where St. Paul's interests were not represented and material issues of liability and damages were not litigated.

Our decision to permit St. Paul to intervene does not mean, however, that an uninsured motorist carrier may intervene in every action between its insured and the uninsured motorist. Such a position would neither promote judicial economy nor be practical from an insurer's perspective. An insurer may not intervene unless its interests are not being adequately protected by the existing parties. Only upon receiving notice of the default hearing did St. Paul learn that its interests were not being protected. Its subsequent motion to intervene was timely filed and should have been granted.

■ 2. The situation before us is unusual because the defaulting party is not seeking to set aside the default judgment, but rather the intervenor whose interests are affected by the default judgment is seeking to vacate the judgment. Upon intervention, St. Paul becomes a party to the lawsuit, *State ex rel. Bergin v. Fitzsimmons,* 226 Minn. 557, 565, 33 N.W.2d 854, 858 (1948) (per curiam), and is entitled to assert any defenses that may exist to Erickson's claim. Although St. Paul sought to vacate the default judgment against Bennett, technically the judgment need not be set aside in order for the issues of liability and damages to be litigated. The matter may proceed with Erickson as party plaintiff and St. Paul as party defendant. Our decision to allow St. Paul to intervene, however, includes setting aside the default judgment.

St. Paul moved to vacate the judgment under Minn.R.Civ.P. 60.02(6), which permits a trial court to relieve a party from a final judgment for any "reason justifying relief from the operation of the judgment." *Id.* This provision reflects the discretionary power of the court to grant relief from a judgment in exceptional situations where the reason justifies relief and the motion is made within a reasonable time. *See Newman v. Fjelstad,* 271 Minn. 514, 522, 137

N.W.2d 181, 186 (1965). These criteria are satisfied for reasons similar to those discussed above concerning intervention.

A significant dispute exists here as to both the issues of liability and damages. The default hearing was marked by a complete absence of the adverse relationship essential to fully and fairly litigate these issues, including the strongly contested issue of comparative negligence. St. Paul has a substantial interest in this action and is entitled to answer Erickson's complaint, asserting any defenses that may exist to the claim. Its motion to vacate the default judgment, coming less than 90 days after judgment was entered, was timely under the circumstances. We believe it only fair, however, that Erickson be compensated for attorney's fees and costs he incurred preparing for and attending the default hearing. On remand, the trial court will determine this amount upon proper motion and with such specific documentation as will enable the court to make its decision.

### DECISION

The trial court erred in denying appellant's motion to intervene and to vacate the default judgment.

Reversed and remanded.