AMERICAN STATES INSURANCE COMPANY, Appellant,

v.

Lyle ANKRUM, et al., Respondents,

and

Tofte Cove Homeowner's Association, Inc., Intervenor, Respondent.

No. C7–01–2195.

Court of Appeals of Minnesota.

Oct. 1, 2002.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN; and William D. Paul, William D. Paul Law Office, Duluth, MN, for appellant.

Christopher M. Daniels, Koepke & Daniels, P.A., Minneapolis, MN, for respondents.

Considered and decided by
ANDERSON, Presiding Judge,
RANDALL, Judge, and PARKER,
Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

RANDALL, Judge.

## OPINION

This appeal is from a declaratory judgment determining that respondents-insureds are entitled to coverage under individual commercial liability policies issued to them by appellant-insurer. The insurer argues that (a) the insureds were engaged in a joint venture and, therefore, are not entitled to coverage under their individual policies; (b) respondent-intervenor, the plaintiff in the underlying action, lacked standing to intervene and vacate the default judgment against the insureds; (d) the Miller–Shugart agreement was invalid because the insureds' entitlement to coverage had already been judicially determined and the agreement was the result of collusion; and (e) the district court erred in awarding the underlying plaintiff attorney fees. We affirm in part and reverse in part; we deny respondents' motion to strike.

## FACTS

*Procedural facts*

In January 1995, a fire started in a Tofte Cove townhome and spread throughout the building, which contained six townhomes. The fire started when an employee of the Tofte Management Company was using a hot-air gun to thaw frozen pipes located in a townhome's wall. As a result, Tofte Cove Homeowners Association (Tofte Cove) sustained $762,163 in property damage. Tofte Cove was compensated for the loss by its property insurer, St. Paul Companies.

In 1996, Tofte Cove, on behalf of St. Paul Companies, brought a breach-of-con-

Minn. Const. art. VI, § 10.

tract action against the subcontractors hired to construct the Tofte Cove townhomes, alleging that defective construction, specifically the failure to install fire stops, caused the fire to spread far more extensively than it would have if fire stops had been installed. Respondents Lyle Ankrum and Bill Ermatinger, who installed sheetrock and performed drywall services on the townhomes, were brought into that action in January 1997 when they were served with the second amended complaint.

Both Ankrum and Ermatinger had commercial liability-insurance policies with appellant American States Insurance Company (ASI). Ankrum and Ermatinger in January and March 1997, respectively, tendered defense of the action to ASI. ASI retained Robert Magie to represent Ankrum and Ermatinger.

In March 1997, ASI sent Ankrum a reservation-of-rights letter notifying him that ASI reserved its right to disclaim coverage if it was later determined that the allegations and damages claimed in the lawsuit fell outside of the policy coverage and that ASI might bring a declaratory-judgment action to determine the extent of coverage owed. Ermatinger testified that he did not receive any letter from ASI in 1997, and ASI did not produce a copy of a reservation-of-rights letter to Ermatinger. In April 1997, Magie filed an answer and cross-claim on behalf of Ankrum and Ermatinger, alleging that it was not their responsibility to install fire stops.

In July 1997, ASI commenced a declaratory-judgment action against Ermatinger and Ankrum, seeking a declaration that it was not obligated to provide a defense or coverage to Ermatinger or Ankrum in the underlying Tofte Cove action because Ermatinger and Ankrum were either partners or in a joint venture when they performed the drywall work on the Tofte Cove townhomes. Although the summons and complaint named and were served on both Ermatinger and Ankrum, the complaint referred only to policy number 01–CD–608242–1, the policy issued to Ankrum, and to "the policy issued to defendant Ankrum" and to "the policy of insurance issued by [ASI] to Lyle Ankrum." ASI had issued a separate policy to Ermatinger, policy number 01–CD–566779–1.

Neither Ermatinger nor Ankrum served or filed an answer in the declaratory-judgment action. Ermatinger testified that he probably "laid [the summons and complaint] aside and forgot about it." Ankrum gave no reason for failing to answer. Magie testified that Ermatinger and Ankrum came to see him about the declaratory-judgment action but declined, on confidentiality grounds, to disclose any information about those meetings.

Tofte Cove was not named as a party in the declaratory-judgment action. Tofte Cove's attorney, Steve Pfefferle, testified that Magie told him about the declaratory-judgment action but that he did not seek to intervene because he was waiting for the formal notice required by law to be provided to interested parties.

In November 1997, ASI moved for a default judgment in the declaratory-judgment action based on Ankrum's and Ermatinger's failure to answer. The district court granted ASI's motion, ordering that ASI had

> no duty to defend or indemnify defendants Lyle Ankrum and bill Ermatinger, or either of them in the separate litigation brought against them by [Tofte Cove].

On November 12, 1997, judgment was entered for ASI. The judgment states that more than 20 days had elapsed after the summons and complaint was served on Ankrum and Ermatinger and that neither

one had served an answer or made any appearance in the action.

In November 1997, per ASI's instructions, Magie withdrew from representing Ankrum and Ermatinger in the Tofte Cove action. Neither Ankrum nor Ermatinger hired another attorney to represent them.

A mediation was conducted, and the parties other than Ermatinger and Ankrum settled for a total of $300,000, with the carpenter contractor contributing $102,500; Rysdahl, Buntz contributing $145,000; and the architect contributing $52,500. The $300,000 settlement left about $450,000 in outstanding damages. Pfefferle testified that at the mediation, someone informed him of the default judgment for ASI in the declaratory-judgment action.

In June 1998, Pfefferle wrote a letter to ASI's attorney, William Paul, stating that Tofte Cove intended to pursue its claim against Ermatinger and Ankrum through entering into Miller–Shugart agreements with them and moving to vacate the default judgment in the declaratory judgment action. The letter stated that a Miller–Shugart agreement was likely to be in the amount of $450,000; indicated that Tofte Cove would be willing to settle for an amount substantially less than $450,000; and invited ASI to enter into settlement negotiations. The letter stated that Tofte Cove held Ankrum and Ermatinger responsible for failing to install fire stops.

A jury trial in the Tofte Cove action was scheduled to begin on November 30, 1998. Tofte Cove had at least three experts prepared to testify against Ermatinger and Ankrum on the issues of liability, causation, and damages. The contractors who had settled with Tofte Cove had cross-claims pending against Ermatinger and Ankrum and experts prepared to testify that the drywall and sheetrock work had been performed negligently.

In October 1998, Ascher, substituted counsel for Tofte Cove, contacted Ankrum and informed him that Tofte Cove proposed entering into a Miller–Shugart agreement with Ankrum. Ascher explained to Ankrum that under a Miller–Shugart agreement, Ankrum would confess judgment in a certain amount, and Tofte Cove would only seek to satisfy the judgment against ASI. Ascher testified that he explained to Ankrum that he was not his attorney and could not give him legal advice. Ascher testified that he had basically the same conversation with Ermatinger. Both Ankrum and Ermatinger advised Ascher that they did not believe they were at fault for the fire loss.

On October 13, 1998, Ascher sent proposed Miller–Shugart agreements in the amount of $225,000 each to Ankrum and Ermatinger. Ascher indicated on the accompanying cover letter that he would like a response by October 20, 1998.

Ermatinger signed the agreement on October 15, 1998, and returned it to Ascher, who signed it on October 22, 1998. Ermatinger testified that he signed the agreement because he had been told it would get him out of the lawsuit and protect his assets. Ermatinger testified that he did not understand that by signing the agreement, he was admitting liability in the amount of $225,000 and that Tofte Cove could attempt to collect that amount from his insurer.

Ascher did not receive a response from Ankrum by October 20, so he called him a second time. Ascher testified that he explained to Ankrum that Tofte Cove had information, evidence, and opinions that could result in Ankrum and Ermatinger or either one of them being legally liable for the full amount of $750,000 in damages. Ankrum signed the Miller–Shugart agree-

ment on October 26, 1998, and returned it to Ascher, who signed it the next day.

On October 19, 1998, Tofte Cove filed a motion to intervene in the declaratory-judgment action pursuant to Minn. R. Civ. P. 24 and to vacate the default judgment pursuant to Minn. R. Civ. P. 60. ASI opposed Tofte Cove's motion on grounds that it was untimely and that Tofte Cove could neither satisfy the test for intervention under Minn. R. Civ. P. 24.01 nor the test for vacating a default judgment.

Following a hearing, the district court granted Tofte Cove's motion to intervene and vacated the default judgment in the declaratory-judgment action. On November 9, 1998, pursuant to the Miller–Shugart agreements, judgment was entered against Ankrum and Ermatinger in the amount of $225,000 each.

In November 1998, in the declaratory-judgment action, Ascher filed a joint answer and counterclaim on behalf of Ankrum, Ermatinger, and Tofte Cove. The answer denied that Ermatinger and Ankrum had been engaged in a joint venture in their contract to perform the drywall work on the Tofte Cove townhomes. The counterclaim alleged that ASI had breached its insurance contract with Ermatinger by failing to defend and indemnify him in the underlying Tofte Cove action.

After the district court denied the parties' cross-motions for summary judgment, the declaratory-judgment action proceeded to a two-phase trial. In phase one, a jury trial was held on the issue of whether Ankrum and Ermatinger were engaged in a joint venture or partnership. The district court denied ASI's motion for a directed verdict. The jury found that Ankrum and Ermatinger were not engaged in a joint venture or partnership. The district court denied ASI's motion for a new trial or JNOV, and judgment was entered

for Ankrum and Ermatinger on the coverage issue.

The remaining issues were tried to the court. The district court concluded that the Miller–Shugart agreements were valid, reasonable, and prudent, and not the product of fraud or collusion. Accordingly, judgment was entered against ASI and in favor of Tofte Cove in the amount of $450,000 together with costs, disbursements, and interest. Based on its conclusion that ASI wrongfully disclaimed coverage to Ankrum and Ermatinger, the district court awarded Tofte Cove attorney fees and expenses allocable to the coverage portion of the litigation. The district court denied ASI's motion for a new trial or amended findings of fact and conclusions of law.

*Underlying facts*

Ermatinger had operated his own drywall business as a sole proprietorship since 1970, sometimes using the business name North Country Drywall. Ankrum also operated his own drywall business as a sole proprietorship. Ermatinger and Ankrum sometimes worked together on projects, but each had his own equipment and tools.

Ermatinger and Ankrum contacted Rysdahl, Buntz, Inc., the general contractor for the Tofte Cove townhomes, to inquire about drywall work on the project. They learned that a building was being constructed that would contain six three-bedroom townhomes. Because it was a large job, too much for either of them to handle alone, Ermatinger and Ankrum jointly submitted a bid to perform the drywall work

Ermatinger and Ankrum submitted a bid to provide labor to install 1,064 sheets of sheetrock on the townhomes' walls and ceilings at a cost of 12¢ per square foot, with an estimated total cost of $6,130, and to prime all drywall surfaces at a cost of $250 per townhome. Rysdahl provided the

materials for the project and paid Ermatinger and Ankrum in six installments.

Ermatinger and Ankrum agreed to equally divide profits and expenses. Expenses included gas, food, and the cost of laborers to hang sheetrock. They took turns driving to the job site. They agreed to contribute equal time, skill, and labor to the project. They assumed equal responsibility for completing the project, meaning that if one of them left the project, the other would complete it.

Rysdahl accepted Ankrum and Ermatinger's bid and presented them with a contract. Ermatinger testified that they were going to use their individual names on the contract but instead used the name Drywall Service because Rysdahl advised them that a business name was required. Ermatinger believed that Rysdahl required a business name for insurance or financing purposes. Ermatinger testified that he and Ankrum did not use the name Drywall Service on other projects. Ermatinger testified that when he and Ankrum worked together on other projects,

> [w]e just worked individually on the jobs. And if we worked any jobs at all, it was either made out in his name or my name as the checks.

In a recorded statement,[1] Ankrum stated that he and Ermatinger used the name Drywall Services when they worked together on other projects and that he never used the name Drywall Services when he worked on projects alone.

The contract states that it is a subcontract between Rysdahl, Buntz & Inc., the contractor, and Drywall Service, Lyle Ankrum, the subcontractor. Ankrum, Ermatinger, and Rysdahl all signed the contract. Ermatinger testified that Rysdahl required both him and Ankrum to sign the contract. An addendum to the contract

listed both Ankrum and Ermatinger under the name Drywall Service. Dennis Rysdahl, president of Rysdahl, testified:

> As I understood it, it really was a contract between Rysdahl–Buntz Incorporated and [Ankrum] and [Ermatinger]. And the Drywall Services I understood to be a trade name they used for this one venture that wasn't really an entity. We assumed we were dealing with these two individual guys coming together to cooperate on this project.

Dennis Rysdahl testified that he did not know anything about the agreement between Ankrum and Ermatinger to divide work, expenses, and profits.

Rysdahl advised Ankrum and Ermatinger that they needed to obtain insurance for the project. Ermatinger testified that he had never previously had to obtain insurance for his business. Ermatinger testified that he went to the Reliable Insurance Agency, through which he obtained his personal insurance, and spoke to one of its employees, Paula Mackai. Ermatinger testified:

> I said, I need insurance 'cause I'm going to be doing a project up at Tofte and it's townhouses or condominiums or something. I don't recall exactly what I told her it was for, but—so I asked her approximately what kind of insurance I should have and * * * I think we settled on a sum of $600,000.

Ermatinger filled out an insurance application, listing himself after the heading "Insured Name" and North Country Drywall after the heading "DBA." Ermatinger indicated on the application that North Country Drywall was an individual business and that he was the only employee.

ASI issued to Ermatinger an ultra contractor's policy, a commercial liability policy for small contractors, including sole

---

**1.** Ankrum died in 2000, so there is no trial or deposition testimony by him.

proprietorships and businesses with only a few employees. The premium is determined based on the type of contractor (e.g., siding, drywall, concrete) and the liability limit and then multiplied by the number of employees insured. Ermatinger paid $204, the premium for one insured, for $600,000 in liability coverage.

Like Ermatinger, Ankrum obtained an ultra contractor's policy from ASI through Mackai and paid a $204 premium for $600,000 in liability coverage. On his insurance application, Ankrum listed himself after the heading "Insured Name," left "DBA" blank, and indicated that he was the only employee of an individual business.

Before beginning work on Tofte Cove, Ankrum and Ermatinger hired Dale Johnson and Maze Keyport to hang the sheetrock. Ermatinger testified that he and Ankrum checked Johnson's and Keyport's work and could have required them to fix any mistakes. Johnson and Keyport hung the sheetrock on the first two units. Ermatinger and Ankrum did the follow-up taping and priming work.

After completing their work on the first two units, Johnson and Keyport decided the work was too difficult for the money they were being paid and left the job. Because it was Ankrum's and Ermatinger's responsibility under the contract to hire and provide labor to install the sheetrock and because they did not know any other sheetrockers in the Tofte area, they contacted Rysdahl to find out if he knew any. Rysdahl hired two replacement sheetrockers for a 3¢ or 4¢ per square foot over the contract price and paid them out of Ankrum's and Ermatinger's share of the contract price before paying Ankrum and Ermatinger. Those sheetrockers left the job after completing units three and four. Rysdahl hired a second set of two replacement sheetrockers to hang the sheetrock

in units five and six. They were also paid more than the contract price and were paid out of Ermatinger's and Ankrum's share.

## ISSUES

I. Did the district court err in denying ASI's motions for summary judgment, a directed verdict, and JNOV on the issue of whether Ankrum and Ermatinger were engaged in a joint venture?

II. Did the district court err in vacating the default judgment?

III. Did the district court err in finding the Miller–Shugart agreements valid?

IV. Did the district court err in awarding attorney fees?

## ANALYSIS

### I.

■ An appellate court reviews de novo the denial of a motion for a directed verdict or JNOV. *Pouliot v. Fitzsimmons,* 582 N.W.2d 221, 224 (Minn.1998) (JNOV); *Claflin v. Commercial State Bank,* 487 N.W.2d 242, 247 (Minn.App.1992) (directed verdict), *review denied* (Minn. Aug. 4, 1992).

■ In reviewing an order denying a directed verdict, an appellate court will consider whether the evidence was sufficient to present a fact question to the jury. *Claflin,* 487 N.W.2d at 247. A directed verdict will be granted only when,

> in light of the evidence as a whole, it would be the duty of the trial court to set aside a contrary verdict as manifestly contrary to the evidence or to the law.

*Id.* Similarly, JNOV will not be granted if the verdict can be sustained on any reasonable theory of the evidence. *Pouliot,* 582 N.W.2d at 224. The evidence must be practically conclusive against the verdict

so that reasonable minds can reach only one conclusion. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 522 (Minn.1979). The court must view the evidence in the light most favorable to the nonmoving party. *Pouliot*, 582 N.W.2d at 224 (JNOV); *Claflin*, 487 N.W.2d at 247 (directed verdict).

ASI also challenges the denial of its summary-judgment motion. *See Reinhardt v. Milwaukee Mut. Ins. Co.*, 524 N.W.2d 531, 533–34 (Minn.App.1994) ("Appeal of a denial of a motion for summary judgment is properly taken from a subsequent judgment.") (citation omitted), *review denied* (Minn. Feb. 14, 1995).

> On appeal from denial of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in applying the law.

*Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996).

Although in some circumstances whether a joint venture exists can be determined as a matter of law, the issue is generally a question for the fact-finder to determine. *See Hansen v. St. Paul Metro Treatment Center, Inc.*, 609 N.W.2d 625, 628 (Minn.App.2000), *review denied* (Minn. July 25, 2000). The elements of a joint venture are:

> (1) contribution, i.e., the parties must combine money, property, time, or skill in some common undertaking; (2) joint proprietorship and control, i.e., a proprietary interest and right of mutual control over the subject matter of the property engaged in the venture; (3) sharing of profits by express or implied agreement; and (4) a contract, express or implied, showing that a joint venture was entered into.

*Powell v. Trans Global Tours, Inc.*, 594 N.W.2d 252, 256 (Minn.App.1999).

A reviewing court may not weigh the evidence or judge the credibility of the witnesses when determining if any competent evidence exists in the record to sustain the jury's verdict. *Conroy v. Book Automation, Inc.*, 398 N.W.2d 657, 662 (Minn.App.1987). In this case, Ankrum and Ermatinger each owned and operated a drywall business as a sole proprietorship. The record contains evidence that in working on the Tofte Cove project, Ankrum and Ermatinger operated their businesses in the same manner as they would have had each been the only drywall subcontractor on the project. Ankrum and Ermatinger each had his own tools, and each obtained his own insurance policy. They were paid in their individual names. There is no evidence that either one had control over the other's work. Ermatinger described their relationship as separately working together on the project. *See Powell*, 594 N.W.2d at 256 (discussing joint control necessary to support a finding of joint venture). The fact that they may have shared employees is not conclusive on the issue of joint control. *Hansen*, 609 N.W.2d at 629 (Minn.App.2000). Viewing the evidence in the light most favorable to the verdict, as we must, the jury reasonably found that Ankrum and Ermatinger were not engaged in a joint venture. *See id.* (holding that whether two corporations operating a methadone clinic were engaged in a joint venture was a fact question); *Walton v. Fujita Tourist Enterprises Co., Ltd.*, 380 N.W.2d 198, 202 (Minn.App.1986) (holding that when Northwest Airlines and Pacific Delight, a tour wholesaler, cosponsored trips, whether they were engaged in a joint enterprise was a fact question), *review denied* (Minn. Mar. 21, 1986).

ASI argues that the existence of a joint venture should not have been submitted to the jury but rather decided by the

court in a bench trial. The record shows that just before the trial began, ASI expressly agreed that the issue of whether Ankrum and Ermatinger were engaged in a joint venture should be submitted to the jury. Having acquiesced in submitting the issue to the jury, ASI cannot object to it on appeal.

## II.

■ A court may grant relief from a final judgment, order, or proceeding for certain enumerated reasons such as mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief. Minn. R. Civ. P. 60.02(a), (f). In considering whether to grant relief from a default judgment under rule 60.02, courts require the party seeking relief to demonstrate that: (1) it has a reasonable defense on the merits of the case; (2) it has a reasonable excuse for its failure to act; (3) it acted with due diligence after the notice of entry of the default judgment; and (4) the opposing party will not be substantially prejudiced if the motion to vacate the default judgment is granted. *Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 490 (Minn.1997). All four factors must be met to justify granting relief under rule 60.02. *Nguyen*, 558 N.W.2d at 490.

In reviewing orders concerning intervention as of right under Minn. R. Civ. P. 24.01, this court will independently assess the appropriateness of the order * * *. We are not held to a standard of review requiring a clear abuse of discretion before we may reverse a trial court's denial of a motion to intervene as a matter of right.

Rule 24.01 establishes a four-part test that a nonparty must meet before being allowed to intervene as a matter of right: (1) a timely application for intervention; (2) an interest relating to the property or transaction which is the sub-

ject of the action; (3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) a showing that the party is not adequately represented by the existing parties.

*Erickson v. Bennett*, 409 N.W.2d 884, 886 (Minn.App.1987) (citation omitted).

■ In granting the motion to intervene and vacate the default judgment, the district court stated:

Given the circumstances that precede Tofte's motion, the Court considers its application for relief to have been timely. Contrary to the position of [ASI], the Court finds that Tofte clearly had an interest relating to the property or transaction that is the subject of the original action. Specifically, this Court finds such an interest in Tofte's claim that it would have been entitled to payment for damages caused by [ASI's] insured under the policy that has been the subject of the original dispute. * * * Within contemplation of Chapter 555 of the Minnesota Statutes, the Court therefore regards Tofte the as an interested party and one which should have been named in the first instance in [ASI's] declaratory judgment proceeding.

Tofte seeks recovery of substantial sums of money from [ASI's] insured and the likelihood of any recovery would be significantly adversely impacted should there not be coverage under [ASI's] policy. Before these proceedings, Tofte had no opportunity to protect its interest in proceeds of the policy in the context of the dispute between [ASI] and Defendants in the underlying action.

The fourth test under *Erickson*, is the extent that the party seeking to intervene is not adequately represented by the current parties. The Court finds this to be demonstrated by the fact that

[ASI's] insured permitted a default judgment to be taken. .* * * Tofte further notes that it has been unable, prior to the date of the hearing on its application to intervene herein, to obtain from [ASI] a copy of the policy that is the subject of [ASI's] action. As such, Tofte has been at a disadvantage in attempting .to more specifically indicate the grounds upon which it may believe coverage exists. The Court does not find it reasonable to require Tofte to make a detailed showing of the existence of the grounds of recovery on its behalf to support intervention herein under the circumstances. Conversely, permitting intervention and a reopening of the underlying proceeding as between [ASI] and Tofte as assignee of [ASI's] insured will provide an avenue for discovery to be undertaken and the claim to be analyzed. Without a great deal of expense or effort the parties should be able to refine the issues and present any appropriate motions to dismiss or for summary judgment if the facts may warrant such.

Both parties recognize default judgments are not favored in the law. The Court has reviewed the affidavits of the parties and concludes that under the circumstances, Tofte's application for a vacation of the default judgment is timely. It was only through happenstance that Tofte became aware the default judgment had been entered in this matter. Tofte contacted [ASI's] attorney, within a reasonable time thereafter, to resolve the issues arising from this discovery. Tofte's representative contacted [ASI's] attorney and expected to hear back concerning contacts [ASI's] counsel was to have made with his principal. Due to the manner in which communications unfolded, counsel for Tofte was left in limbo—expecting to have some response but receiving none. After it became clear [ASI's] response was not forthcoming, Tofte, reasonably promptly, commenced these proceedings.

Thus far there has been no decision on the merits as to the question of the existence of coverage. [ASI] is not prejudiced by requiring it to litigate the claim which it itself sought to litigate by commencing its original declaratory judgment action.

We agree with the district court's well-reasoned analysis. ASI argues that Ankrum and Ermatinger did not act with due diligence after notice of the entry of the default judgment and offered no reasonable excuse for their failure to answer. But the authorities cited by ASI do not show that it is Ankrum's and Ermatinger's conduct that is relevant rather than Tofte Cove's. The evidence supports the district court's findings on the timeliness of Tofte Cove's motions to intervene and vacate the default judgment. *See Erickson,* 409 N.W.2d at 887–88 (upholding district court's decision allowing insurer to intervene and vacating default judgment when insurer received a copy of the summons and complaint in personal-injury action but was not advised of lawsuit's progress until it received a phone call about a default hearing scheduled for four days later).

ASI argues that it was substantially prejudiced by vacation of the default judgment because it withdrew from representation of Ankrum and Ermatinger in reliance on the default judgment, and, afterwards, the Miller–Shugart agreements were executed. ASI cites *Imperial Premium Finance, Inc. v. GK Cab Co. Inc.,* 603 N.W.2d 853 (Minn.App.2000), to support its position on prejudice. *Imperial Premium* is distinguishable from this case because the party seeking to vacate the default judgment had been served with the summons and complaint. *Steen v. Those Underwriters at Lloyds,* 442 N.W.2d .158 (Minn.App.1989), is also factu-

ally distinguishable because in *Steen*, the insured unilaterally fired the defense attorney provided by its insurer. Regarding the Miller–Shugart agreements, ASI had the opportunity to argue that they are invalid.

## III.

While the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim. * * * If * * * the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement that is in their best interests.

*Miller v. Shugart,* 316 N.W.2d 729, 733–34 (Minn.1982).

In these circumstances, while the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. This can be compared with the somewhat analogous situation in which a joint tortfeasor seeking consideration from a co-tort-feasor must prove the settlement made was reasonable.

*Id.* at 735.

■■■ In this case, the district court found:

Even absent a general rule regarding who must bear the risk, * * * special factors here render it appropriate that ASI bear it. Among them * * * are: 1) the failure to sue on both policies; 2) the failure to name [Tofte Cove] as a party; 3) the preclusion and lack of any decision of the coverage issue on the merits; 4) the failure to advise the insureds of the nature and importance of the coverage litigation; 5) the failure to serve the insureds with the default motion; 6) the failure to give its insureds notice of the default hearing; 7) the failure to notify [Tofte Cove] of the pendency of the coverage action; 8) the failure to notify [Tofte Cove] its insureds had not answered; 9) the failure to notify [Tofte Cove] of the intent to apply for a default; 10) the failure to notify [Tofte Cove] of the default hearing; 11) the failure, from the record before the Court, to serve notice of filing of the order on the default motion upon [Ankrum] or [Ermatinger]; 12) ignoring the notice by its designated counsel in the underlying action of the questionable validity of the default order in connection with its decision to have him withdraw defense of [Ankrum] and [Ermatinger] therein; 13) and choosing to take no remedial action in the face of [Tofte Cove's] advice, received before the releases were executed, that ASI's procedure was flawed.

The district court also found that coverage was in doubt because the time to move for vacation of the default judgment had not expired.

The evidence supports the district court's findings that the Miller–Shugart

agreements were reasonable and prudent and not the product of collusion. We particularly note ASI's failure to reference Ermatinger's policy in the declaratory judgment action, which left Ermatinger essentially "hung out to dry." He had no adequate notice that ASI sought to avoid providing coverage under his policy.

## IV.

In *Morrison v. Swenson,* 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966), the supreme court created a limited exception to the general rule that legal fees are ordinarily not recoverable absent contractual or statutory authority for the award. The court limited its holding to situations in which an insured incurs legal fees in a declaratory-judgment action instituted to compel an insurer to defend a case where the insurer wrongfully refused to defend the insured in the underlying litigation. *Id.* at 138, 142 N.W.2d at 647. Noting that a declaratory-judgment action to determine coverage is "in the nature of an action to recover damages for breach of contract," the court explained

> that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

*Id.* at 138, 142 N.W.2d at 647; *see also Am. Standard Ins. Co. v. Le,* 551 N.W.2d 923, 926 (Minn.1996) (reiterating that an insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine coverage unless the insurer has breached the insurance contract in some respect, typically by wrongfully refusing to defend the insured).

■ Thus, when an insurer retains an attorney to defend its insured in the underlying litigation, and at the same time brings a declaratory-judgment action to determine coverage, the insured is not entitled to attorney fees incurred to defend the declaratory-judgment action. *Le,* 551 N.W.2d at 928. Under Le, an insurer may contest coverage in a separate action and not be liable for its insured's attorney fees in that action:

> If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend [and] the insured is not entitled to attorneys' fees and costs for the declaratory judgment action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying action.

*Chicago Title Ins. Co. v. FDIC,* 172 F.3d 601, 605 (8th Cir.1999).

■ In this case, Ankrum and Ermatinger tendered defense of the Tofte Cove litigation to ASI, and ASI retained an attorney to defend them in that litigation. In April 1997, the attorney filed an answer and cross-claim on behalf of Ankrum and Ermatinger. In July 1997, believing that Ankrum and Ermatinger were not covered by their respective policies because it suspected that they had been engaged in a joint venture, ASI commenced a declaratory-judgment action to determine coverage. ASI did not instruct the attorney to withdraw from representing Ankrum and Ermatinger until after entry of the default judgment and district court order determining that ASI did not owe a duty to defend or indemnify Ankrum and Ermatinger in the Tofte Cove litigation.

Therefore, the district court erred in finding that ASI breached the insurance contract by wrongfully refusing to defend Ankrum and Ermatinger. ASI properly relied on the default judgment and accompanying order determining that it did not

owe a defense or coverage to Ankrum and Ermatinger. Therefore, Ankrum and Ermatinger would not have been entitled to attorney fees in the declaratory-judgment action. Accordingly, the district court erred in awarding attorney fees to Tofte Cove, Ankrum's and Ermatinger's assignee under the Miller–Shugart agreements.

Respondents moved to strike from the record on appeal a mediation statement and a recorded statement of Ankrum. The record on appeal "shall consist of the papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ.App. P. 110.01. Respondents correctly assert that Ankrum's statement was not admitted into evidence at trial and that details of a mediation session are not admissible evidence. But Ankrum's statement, the fact that a mediation occurred, and the mediation statement were part of the district court record. We deny respondents' motion to strike.

## DECISION

The evidence supports the jury's finding that Ankrum and Ermatinger were not engaged in a joint venture; therefore, the district court properly denied ASI's motions for summary judgment, a directed verdict, and JNOV. The district court did not err in granting Tofte Cove's motion to intervene and vacate the default judgment or in finding that the Miller–Shugart agreements were reasonable and prudent and not the product of collusion. The district court erred in awarding Tofte Cove attorney fees.

**Affirmed in part and reversed in part; motion denied.**